ANDREW ERWIN, APPELLANT, *v.* WILLIAM S. PARHAM, JAMES DICK, AND HENRY R. W. HILL.

Where a bill in chancery states that, at an execution sale, which was alleged to have been open and fair, the complainant purchased, for the sum of $600, certain promissory notes secured by mortgage, amounting in the whole to $260,000, and the bill was demurred to, and the demurrer sustained by the Circuit Court, this judgment must be reversed.

Mere inadequacy of price does not, of itself, furnish a sufficient reason for dismissing the bill, or deciding that the complainant was entitled to no relief whatever.

THIS was an appeal from the Circuit Court of the United States for the District of Louisiana, sitting as a court of equity.

It came up upon a demurrer to a bill filed by Andrew Erwin, which demurrer was sustained by the court, and the bill dismissed with costs. The facts set forth in the bill, arranged in chronological order, were as follows:—

In the year 1839, James M. Wall, a citizen of the State of Mississippi, appears to have been in possession of two plantations in Louisiana; and on the 16th of November, in that year, sold them, together with the stock and slaves upon them, to William S. Parham, for a sum amounting very nearly to $300,-000. Of this consideration, $35,200 were in cash, and the residue in thirteen promissory notes, each for the sum of $20,369.23, payable on the 1st of January, 1842, 1843, 1844, 1845, 1846,

1847, 1848, 1849, 1850, 1851, 1852, 1853, 1854.    These notes were drawn in favor of Wall, made payable and negotiable at the Citizens Bank of New Orleans, and were indorsed "*ne varietur*" by the notary before whom the deed was acknowledged, and secured by a mortgage of the property.    It was further stipulated in the deed, that Parham was to settle all claims against the property, and have a credit upon the notes for whatever sums he might pay.    A list of the mortgages outstanding upon the property was waived by the parties, because, as was stated in the deed, " Parham was advised of the mortgages existing on said property."    The list nowhere appeared in the record.

In 1842 Wall, being a resident of Mississippi, was sued in the Circuit Court of the United States for that district, by one William M. Beal, a resident and citizen of Louisiana; and a judgment was recovered at the May term in said suit for $2,365.13.    An execution was issued upon this judgment against Wall, which was returned "*nulla bona*."

On the 1st of August, 1842, Parham conveyed to his mother, Elizabeth Jane Parham, who was also the mother of Wall, all the property which had been conveyed to him by Wall on the 16th of November, 1839.    The consideration for this deed was, that the grantee should pay the thirteen promissory notes above mentioned (except the sum of $18,000, which was stated to have been paid on account of them); that the grantee should also pay to one W. Ford, Jr., $6,986.52, which Parham owed in three separate notes, and should also pay sundry small debts, not exceeding in the whole five thousand dollars.

On the 20th of November, 1845, Beal filed a petition in the Ninth District Court of the State of Louisiana, setting forth the judgment which he had recovered against Wall in the State of Mississippi, and praying that it might be made executory in Louisiana.    An order of seizure and sale was accordingly granted, and, on the 19th of January, 1846, a writ of *fieri facias* was issued to the sheriff of the parish of Madison, commanding him to seize all and singular the property movable or immovable, rights and credits of Wall within his parish.

On the 24th of January, 1846, the sheriff levied this execution upon the thirteen promissory notes above described.

On the first Saturday in May, 1846, the said sheriff, after having carefully and strictly observed and complied with and performed all the solemnities and formalities required by the law and the statute in such case made and provided, sold two of the thirteen promissory notes, viz., the two which were due on 1st January, 1846 and 1847, to Andrew Erwin, the appellant, and one John W. Nixon, as equal proprietors, for the sum of $300,

that being the last and highest bid, and conveyed the same to the purchasers in due form of law.

On the same day, and after the above sale, the sheriff exposed to sale the remaining eleven notes, which were purchased by Erwin alone, and a deed executed for them by the sheriff.

On the 31st of January, 1846, between the seizure and sale, Wall acknowledged, before a notary-public, that he was indebted to Dick and Hill in the sum of $35,979.53; that he had given them his promissory note for that amount, due on 1st April following; and that, to secure the payment thereof, he, on that day, pledged, transferred, and delivered to said Dick and Hill, two of the thirteen notes above mentioned, viz., those which were due on 1st January, 1845 and 1846, respectively.

In the mean time, but when the record did not show exactly, Elizabeth Parham, the mother, died, leaving Parham and Wall her heirs at law.

At some period subsequent to the above transactions, but when the record did not show, Dick and Hill got possession of the rest of the thirteen promissory notes, two of which had been pledged to them by Wall, as above stated.

On the 2d of January, 1847, Dick and Hill, being thus in possession of the notes, caused the mortgaged property, for the purchase of which the notes were given, to be levied upon and seized by the sheriff of the parish of Madison, and exposed to sale at public auction. They became the purchasers at the sale for the sum of $50,000.

On the 26th of February, 1047, Erwin filed his bill in the Circuit Court of the United States for Louisiana, setting forth, in great detail, the above facts; and averring that Nixon had sold his half of the two notes purchased by him and Erwin conjointly, to some person unknown. The bill charged Dick and Hill with a corrupt, fraudulent, and iniquitous combination and conspiracy, to and with Wall, to cheat, defraud, and injure the creditors of Wall, and especially the complainant. It averred, that Dick and Hill were the creditors of Wall (if at all) only for advances made upon crops, which advances had been fully paid; that the sale by them of the mortgaged property was therefore wholly unnecessary; that the sum of $50,000 was an inadequate price; that, if they had a claim upon Wall for a sum less than $50,000, the residue, after paying themselves, ought to be shared amongst the creditors of Wall, amongst whom the complainant was one; that Wall was in the enjoyment of all the large revenues from the property. The bill then prayed that Parham should be adjudged to pay, &c., and in default thereof that the property might be sold. It further prayed for an injunction upon Parham, Dick, and Hill, forbidding

them from selling the property, or disposing in any manner of any of the revenues or crops.

An injunction was granted, and the defendants appeared and answered; but afterwards withdrew their answers and demurred to the bill.

On the 8th of February, 1848, the Circuit Court dissolved the injunction, and dismissed the bill, with costs; whereupon, the complainant appealed to this court.

It was argued by *Mr. Johnson,* who made the following points:

1. That the notes, from 1 to 13, inclusive, by virtue of the executory process of seizure and sale and purchase, averred in the bill, became the property of the complainant in his own right as to eleven of them, and to one half of the other two; the other half having been originally in J. W. Nixon.

2. That, as such owner of said notes, he had a specific lien upon the property, real and personal, mentioned in the bill.

3. That, upon that ground alone, as well as upon the ground of discovery, he had a right to the relief prayed.

4. That he was entitled to relief, also, upon the ground of the corrupt combination and conspiracy between the defendants, Dick and Hill, and James M. Wall, to defraud the complainant, as well as upon the ground of like combination and conspiracy between Dick and Hill and William S. Parham, to defraud the creditors of said Wall.

5. That if the property, subject to the incumbrance of said notes, is not in the hands of Dick and Hill responsible for the whole amount of the notes, it is at least responsible in the proportion that said amount bears to the sum of $35,979.79, with the interest thereon, being the amount of the note made by Wall to Dick and Hill, dated 31st January, 1846.

6. The rule established in 5 Peters and 11 Gill & Johnson, is that if, besides inadequacy of price, there be suspicion of fraud, equity will leave the party to his remedy at law. But here there is nothing but mere inadequacy of price. We bought at a judicial sale, and all the preliminary steps required by law are alleged in the bill, and admitted by the demurrer to have been taken.

Mr. Justice CATRON delivered the opinion of the court.

This case comes up from the equity side of the Circuit Court for the Fifth Circuit and District of Louisiana, by appeal from a decree supporting a demurrer to a bill of complaint filed by the present appellant.

The bill, filed 24th February, 1847, states, in substance, that

in the year 1842, one William M. Beal, a resident of the city of New Orleans, obtained judgment in the United States Circuit Court for the Southern District of Mississippi, against James M. Wall, for the sum of $2,265.13 besides costs. That upon this judgment execution was issued in the last-mentioned district, where Wall then resided, and that such execution was returned "*nulla bona*." That subsequently, and in the year 1845, this judgment being in full force and unpaid, Beal filed his petition in the Ninth District Court of the State of Louisiana, held in and for the parish of Madison, setting forth the judgment and praying that by the law of Louisiana it might be made executory in that State, and that process thereon might be granted him against all the property, real and personal, rights and credits of Wall, in the State of Louisiana, and that they might be applied to the satisfaction of his rightful claim. That executory process was granted by the court so petitioned, and that in pursuance of an order of seizure and sale thereupon made, a writ of *fi. fa.* was, on or about the 19th March, 1846, issued to the sheriff of the parish of Madison, commanding him to seize all the property, rights and credits of Wall, within his parish, and to sell them for the liquidation of the aforesaid judgment. That in accordance herewith, the sheriff did, on the 24th January, 1846, seize all the right, title and interest of Wall, in and to thirteen certain promissory notes, each and all of them bearing date on the 16th January, 1839, each for the sum of $20,369.23, payable respectively on the 1st of January, 1842, and upon each succeeding 1st of January until and including the 1st of January, 1854. Each and all of these notes being signed and executed by William S. Parham to and in favor of James M. Wall, and paraphed "*ne varietur*" by A. J. Lowry, Esq., Notary-Public in and for the parish of Madison, in order to identify the said notes with an act of mortgage and sale, passed before said Lowry on 16th November, 1839, between William S. Parham as vendee, and James M. Wall, as vendor, by which deed the payment of these thirteen notes bore a mortgage and privilege upon certain property, movable and immovable, in said deed described, together with all and singular the mortgage, liens and privileges by said deed created, or which, by operation and effect of law, subsisted to and in favor of James M. Wall.

That the sheriff did advertise the property so seized for the satisfaction of the judgment in favor of Beal; and on the first Saturday of May, 1846, having complied with all the requisites of the law, exposed for sale, at public auction, two of the promissory notes, viz.: those falling due the 1st of January, in the years 1846 and 1847; and that these two notes were, for the sum of $300, purchased by this appellant and one John W.

Nixon conjointly, together with all the right, mortgages, equities and privileges appertaining thereto, that being the last and highest bid. Whereupon said two notes, together with all the mortgages, &c., pertaining to them, were conveyed by the sheriff to the appellant and said John W. Nixon.

That at the same time, the eleven other of the said notes were, for the further sum of $300, sold and conveyed by the sheriff to the appellant, together with all and singular the equities, &c., attaching to them. The following is the sheriff's return on the execution, exhibited as part of the bill.

" Received on the 19th day of January, 1846, and executed on the 24th day of January of the same year, by attaching, in the hands of William S. Parham, all the notes described in the notice of seizure, and by seizing the same as described in the said notice of seizure, by virtue of the within writ; and after having advertised the same for the space of fifteen clear days, the sale to take place on the first Saturday of March, 1846, and on which first Saturday of March, 1846, I proceeded to offer the same for sale for cash, after causing the same to be appraised, and no person present bid for said property two thirds of the appraisement of the same, no sale was affected. Wherefore I, the sheriff, readvertised the same upon a credit of twelve months, for the space of thirty clear days, the sale to take place on the first Saturday of May, 1846, on which said first Saturday of May, 1846, I, the said sheriff, proceeded to offer the said property for sale upon a credit of twelve months, at the court-house door in Richmond, La., and J. J. Amonette being present and acting, as agent for Andrew Erwin, and Robert Garland being present and acting as agent for John M. Nixon, bid for the notes described in said notice of seizure, due 1st January, 1846, and 1st January, 1847, the sum of $300, which being the last bid or offer made, the same was struck off and adjudicated to the said Erwin and Nixon, at and for the said sum of $300; and at the same above-described day I, the said sheriff, proceeded to offer the eleven other notes, as described in the notice of seizure annexed hereto and made a part of this return, on the terms and conditions above described, and no person, being present, bid therefor two thirds of the appraised value of the said property, no sale was effected. Whereupon I, the said sheriff, readvertised the same, the sale to take place at the town of Richmond aforesaid, on the first Saturday of May, 1846, upon a credit of twelve months, for the space of thirty clear days; I, the said sheriff, proceeded to offer, on the said first Saturday of May, 1846, at the town of Richmond aforesaid, the said property; and James J. Amonette being present, and acting as agent for Andrew Erwin, bid therefor the

sum of $300, which being the last and highest bid or offer made, I, the said sheriff, struck off and adjudicated the said property to the said Andrew Erwin, at and for the said sum of $300; and the said Amonette, acting as counsel for the plaintiff herein, has authorized me, the sheriff, to credit this writ the amount of each of said bids, $600.

"Richmond, La., May 13, 1846."

That at the time of the seizure of all these several promissory notes, they were in the possession or control of James M. Wall, and he was at that time invested with all the liens, equities, &c., pertaining to them.

That of all the proceedings of the sheriff of Madison, by virtue of this execution, and of the sale of the several notes to the appellant and Nixon, both Wall and Parham, and all claiming under them, had due legal and constructive notice.

That Nixon had, a few weeks before the filing of the bill, parted with all his interest in the two notes which he had purchased conjointly with the appellant, to some person unknown to the appellant.

The bill then states, that on or about the 16th of November, 1839, James M. Wall was seized and possessed of two large and valuable plantations, of a great number of negroes, and of a large stock and all the utensils, &c., pertaining to so extensive an estate; and being so seized and possessed, he, on the day and year last mentioned, conveyed the same to William S. Parham, in consideration of the sum of $299,999.99, of which a portion was paid in cash, and the rest was represented by the thirteen several promissory notes above referred to.

That notwithstanding James M. Wall and all claiming under him had legal and constructive notice of the sheriff's seizure, on the 24th of January, 1846, of these various promissory notes, yet the said Wall did, on the 31st of January of the same year, execute his promissory note to James Dick and Henry R. W. Hill for $1,846.46, payable on the 1st of April, 1846, and, as security therefor, pledged those two of the notes of Parham in favor of Wall, falling due the 1st January, 1845, and 1st January, 1846.

The bill further states, that within a few weeks before the date thereof, the said Dick and Hill had become possessed of the eleven other notes, but by what means the appellant knows not. That said Dick and Hill had recently discharged William S. Parham from all liability to Wall, or any person or persons claiming under said Wall. That the notes of Parham, in favor of Wall, and above referred to, cannot be met by the drawer unless the property purchased by him of Wall, and charged with the payment thereof, be subjected to their liquidation.

That the said Dick and Hill, being possessed of the said thirteen promissory notes, and professing to act in virtue of the mortgages, equities, and liens pertaining to such notes, had, on the 2d of January, 1847, levied upon, seized, and at public auction sold to themselves, as highest bidders, the property charged with the payment of these notes, for the sum of $50,000; but the complainant cannot state by virtue of and for what particular note or notes.

That the sum of $50,000, the alleged consideration-money for this sale, was less than one third of the real value of the property sold.

The bill alleges that the proceedings between Dick and Hill and Wall, and between Dick and Hill and Parham, were the result of combination and conspiracy to defraud the complainant. That on the 1st of August, 1842, William S. Parham, by deed, conveyed to Mrs. Elizabeth Jane Parham, (the mother of the said Parham and of James M. Wall,) all and singular the property, real and personal, which in the year 1839 had been conveyed by said Wall to said Parham, for and upon consideration, amongst others, that the said Elizabeth Jane Parham would discharge the thirteen promissory notes charged upon the property, but that the said Elizabeth Jane Parham was at the time of this conveyance aged and infirm, and without any other means of paying for the property than by the profits of the property itself; charges said conveyance to be fraudulent and void as to the creditors of Wall or Parham; that it could interpose no hinderance to complainant's recovery. That Elizabeth Jane Parham died in the year 1844, leaving William S. Parham and James M. Wall her heirs at law.

The bill alleges, that the property in question, and upon which the notes are a lien, is not adequate security for their payment, unless all the revenues, issues, and profits of the estate be appropriated to their liquidation. That since the sale of the estate to Parham, such property has greatly depreciated, and that it would not, at the time of bill filed, bring at public sale any thing like its real and just value. That the revenues and profits of the estate are from $20,000 to $30,000 per year. That ever since the conveyance to Mrs. Elizabeth Jane Parham, James M. Wall and William S. Parham have resided upon the estate; the first having the sole management and control of the property, its issues and profits, and both deriving their maintenance and support therefrom.

The bill claims, that if the sale by Dick and Hill was lawful and in good faith, that the proceeds of that sale should be distributed *pro rata* among the several thirteen promissory notes; and after propounding interrogatories, prays the court to award

to the complainant the possession of the thirteen promissory notes, and that he be decreed to have all the liens and privileges pertaining to said notes : That the conveyance to Mrs. Elizabeth Jane Parham be set aside. That the sale of the 2d January, 1847, under which Dick and Hill claim, be declared null ; that a receiver be appointed, and that the defendants be restrained by injunction from intermeddling with, or disposing of, the property in question, or using or disposing of any of the said thirteen promissory notes.

On the 5th of March, 1847, a writ of injunction was granted, and afterwards answers were put in by the defendants, but were subsequently withdrawn, by agreement of counsel, and a demurrer filed, alleging that the bill made out no title to the discovery sought in the interrogatories, and did not contain sufficient matter of equity to establish the claim for relief.

The hearing coming on upon bill and demurrer, on the 8th of February, 1848, the demurrer was sustained, the injunction dissolved, and the bill dismissed with costs, and from this decree the complainant below prosecuted an appeal to this court.

The appellant contends :

1. That the notes from one to thirteen inclusive, by virtue of the executory process of seizure, sale, and purchase, averred in the bill, became the property of the complainant in his own right as to eleven of them, and to one half of the other two, the other half having been originally in J. W. Nixon.

2. That as such owner of said notes, he had a specific lien upon the property, real and personal, mentioned in the bill.

3. That upon that ground alone, as well as upon the ground of discovery, he had a right to the relief prayed.

4. That he was entitled to relief also upon the ground of the corrupt combination and conspiracy between the defendants, Dick and Hill and James M. Wall, to defraud the complainant, as well as upon the ground of like combination and conspiracy between Dick and Hill and William S. Parham to defraud the creditors of said Wall.

5. That if the property subject to the incumbrance of said notes is not in the hands of Dick and Hill responsible for the whole amount of the notes, it is at least responsible in the proportion that said amount bears to the sum of $35,979.79, with the interest thereon, being the amount of the note made by Wall to Dick and Hill, dated 31st January, 1846.

No counsel appeared for the appellees, Dick, Hill, and Parham; and as it does not appear by the demurrer on what grounds of defence the respondents relied in the Circuit Court, or wherefore the court dismissed the bill, we have examined for ourselves, so far as we were enabled, whether any legal defect exists in the

proceeding and process under which the notes were seized and sold. The bill alleges that all the steps taken were in due form of law; nor is any thing found in its statements contrary to the laws of Louisiana, so far as we can ascertain, that will render the sale void.

And as the bill stands on demurrer, and nothing beyond its allegations can be considered, it is not possible for us to say that the complainant is entitled to no relief at all, and therefore dismiss his bill. He paid only six hundred dollars for these thirteen notes, calling, in the aggregate, for $260,000; but this was paid on an execution sale, admitted by the demurrer to have been open to competition, regular and fair. The payer, Parham, may have been insolvent, and the mortgage of no value for want of title in the mortgagor. In such event no startling inadequacy of price could be predicated of the enormous disparity between the nominal amount of the notes, and the price paid for them. Complainant is entitled to relief as the case now stands, certainly to the extent of the six hundred dollars, and interest on it; and he having a right of possession, and owning the judgment, it is not perceived how he could be deprived of the notes until his whole judgment was satisfied. Or, his rights may extend to an enforcement of the mortgage and all the notes. We deem it useless further to speculate on these matters at present.

On the other hand, the execution sale may be void for reasons that can be brought out in evidence, but which are not now open to controversy, because the bill alleges that the proceeding under which complainant purchased was regular and *bonâ fide.* Or again, because of want of title in Wall to the notes and mortgaged property at the date of the levy and sale. These matters, or any others set up in defence, respondents may bring forth by their answer if they chink proper to do so.

All we mean now to say is, that complainant has made a *primâ facie* case for answer and for relief; and it is the duty of respondents, if they mean to defend, to meet that case by answer, and to show, if they can, that no relief should be granted; or, if any, to what modified extent compared with the entire relief prayed. We therefore feel ourselves bound to reverse the decree, and to overrule the demurrer, with leave to respondents to answer in the Circuit Court, when this cause is returned there on our mandate.

Mr. Justice NELSON dissented.

I am unable to assent to the decision of a majority of the court in this case.

The complainant has purchased, at sheriff's sale, thirteen promissory notes, given as part of the purchase-money upon a

sale of a large plantation and slaves; and secured by mortgage on the same to an amount exceeding $260,000 for the small sum of $600; and asks the interposition of the extraordinary powers of this court on the equity side to aid him in realizing this enormous speculation.

I think he should be left to his remedy at law, and this, upon the established course of proceeding of a court of chancery in these cases.

In Seymour v. Delancey and others, (6 Johns. Ch. R. 222,) Chancellor Kent held that a specific performance of a contract of sale is not a matter of course; but rests entirely on the discretion of the court, upon a view of all the circumstances. And that though mere inadequacy of price, independent of other circumstances, is not, of itself, sufficient to set aside the transaction; yet it may be sufficient to induce the court to stay the exercise of its discretionary power to enforce a specific performance. All the cases on this subject will be found reviewed in that case; and, also, by Chief Justice Savage in the Court for the Correction of Errors, where the decree in that case was affirmed. 6 Cow. 445.

The Chancellor, after having referred to many of the cases particularly, observed that these cases show the antiquity of the doctrine of the court; and that the power of awarding the specific execution of contracts, for the sale of land, rested in sound judicial discretion, and was not to be applied to cases that were hard, or unfair, or unreasonable, or founded on very inadequate considerations.

The strong ground against enforcing a contract, where the consideration is so inadequate as to render it a hard bargain, and an unequal and unreasonable bargain, is that, if a court of equity acts at all, it must act *ex vigore*, and carry the contract into execution with unmitigated severity; whereas, if the party be sent to law, to submit his case to a jury, relief can be afforded in damages, with a moderation agreeable to equity and good conscience, and when the claims and pretensions of each party can be duly attended to, and be permitted to govern the assessment.

In the case before us, if the court undertakes to give relief, it would seem, from the established rules of proceeding in equity, that it will be bound to award to the complainant the full amount of the notes in question; and thus enable him to realize upwards of $260,000 upon a purchase at the price of $600; in other words, virtually awarding to him, for this small consideration, an estate, which Wall, one of the defendants, had sold for a sum exceeding $260,000, as the notes in question constitute part of the purchase-money and the payment secured upon this estate.

The inadequacy of the consideration is far beyond that of any case that has come under my observation in the course of this examination, and is such as to shock the common sense of mankind.

In many of the cases in which the court has refused to interfere, mainly on the ground of inadequacy of price, only half the value had been agreed to be given. That was considered as sufficient evidence of a hard and unconscionable bargain, to induce the court to pause, when its extraordinary powers were invoked to the aid of the party seeking to realize the advantage of the contract, and turn him over to a court of law.

The complainant in this case is not without a remedy. If he has got a legal right, he can go into a court of law and enforce it. But I do not think it a fit case for the interposition of a court of equity.

I do not regard the allegation of a fraudulent attempt on the part of the defendants, to prevent the complainant from realizing the benefit of his purchase; as the question, whether or not a court of equity should interfere and grant the relief prayed for, in my judgment, is wholly unaffected by any such considerations; for, assuming the fraud should be hereafter established, and this impediment to the enforcement of the claim set up under the purchase, removed, even then, according to the course of proceeding in a court of equity, as already stated, that court would withhold its extraordinary power from aiding the party to obtain so unjust and unconscionable advantage, and turn him over to a court of law. By entertaining the case, as presented in the bill, and directing an answer, the court assumes that, if the complainant can establish the fraud in the transfer of the notes as charged, he is entitled to its decree for the whole amount of his purchase; for, as we have seen, a court of equity must act, if at all, *ex vigore*, and carry into execution the purchase as it has been made. It cannot consistently, in the exercise of its power on this subject, carry the purchase into partial execution by separating it, granting the execution in part, and withholding it in part. This would be arbitrary, and unsupported by any rule or principle to guide the judgment of the court.

Whether the court will entertain the case at all, or not, and give the relief prayed for in these cases, is a question of judicial discretion; but, when once entertained, and held to be a proper case for the relief, there can be no other given, consistent with established principles, than such as the legal title or right set up carries along with it. If it gives to him an estate in land, the court cannot stop at a moiety of it; nor, in this case, in awarding any amount less than the $260,000. The legal title to the whole amount is as complete as to any portion of it.

For these reasons, thus briefly given, I am obliged to dissent from the decision in this case.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to overrule the demurrer of the defendants with leave to them to answer, and for such further proceedings, in conformity to the opinion of this court, as to law and justice may appertain.