## HUNT *v.* FISHER and others.

*(Circuit Court, W. D. Tennessee. February 7, 1887.)*

**1. REMOVAL OF CAUSES—STAYING PROCEEDINGS OF STATE COURT—REV. ST. U. S. § 720.**

Notwithstanding the prohibitions of Rev. St. U. S. § 720, if the preliminary injunction staying the proceedings of the state court be granted by a state court, the cause will not be remanded upon removal to the federal court.

**2. EQUITY PRACTICE — REMOVAL OF CAUSES — NEW PARTIES — PLAINTIFF COMPELLED TO MAKE.**

If there be parties interested in the subject-matter of a suit in equity, which has been removed to the federal court, who have been intentionally omitted from the bill, upon their application, the plaintiff will be compelled to amend his bill, and bring them in, on pain of remanding the cause to the state court, where the cause can be consolidated with other suits there pending, to which the applicants are parties, or of having his bill dismissed.

**3. COURTS—STATE AND FEDERAL—JURISDICTION TO VACATE DECREES.**

Neither state nor federal courts will undertake to review or correct the errors of each other, but either, as will any court of equity, may inquire into a title procured through judicial proceedings in the other, and, if found based on the fraudulent practices of the parties, the latter will be restrained from taking any advantage under such proceedings.

**4. JUDICIAL SALES—INADEQUACY OF PRICE.**

Where title to property worth many thousands of dollars was purchased at a judicial sale for $100, the purchaser was restrained from taking any title by the purchase, because the facts showed that the sale was made under adverse circumstances, when creditors jointly interested were not parties, and the decree was procured, and the sale made, in a court distant from that in which the land was situated, etc.[1]

**5. EQUITY—ASSIGNMENT FOR CREDITORS—PROPER PARTIES TO FORECLOSE BILL.**

Where a partner conveyed his interest to another upon the lien of a contract that the latter would pay his debts, mentioned in the contract, and himself an annuity, the creditors should be made parties to any foreclosure bill, unless some reasonable excuse be given for omitting them; and one creditor alone will not be permitted to procure a sale, binding on the others, which it would be inequitable to sustain because of an inadequacy of the price realized. If the purchaser pay a fair price, the omitted creditors might be remitted to a remedy against the fund; but, if not, they can pursue the land in his hands, and enforce their lien.

**6. SAME—DUAL RELATION OF CREDITOR AND DEBTOR—ESTOPPEL—RES ADJUDICATA.**

Where a debtor conveyed his property to secure his debts, and, by the same conveyance, secured himself an annuity, he occupies a dual relation to the parties to the contract; and, if the bill be filed by one creditor to foreclose the lien for his sole benefit, the fact that the assignor is made a defendant in his capacity of *debtor* only does not preclude him from filing a bill, in his capacity of *creditor*, to avoid the sale for inadequacy of price. The estoppel must be confined to the scope of the bill, and not comprehend anything beyond that scope.

**7. ASSIGNMENT FOR BENEFIT OF CREDITORS—ELECTION BY ASSIGNEE OF THOSE TO BE PAID—CONSTRUCTION OF STIPULATION TO THAT EFFECT.**

Where it was provided by a contract that the assignee should pay a certain class of creditors to a given amount, and might "elect" such as should be paid,

---

[1] A judicial sale will be set aside for gross inadequacy of price, accompanied by fraud, oppression, or other unfairness in the conduct of the sale. Davis **v.** McGee, 28 Fed. Rep. 867; Bean v. Hoffendorfer, (Ky.) 2 S. W. Rep. 556, and note.

See, also, Carden v. Lane, (Ark.) 2 S. W. Rep. 709.

it was held that, on the whole instrument, it was not intended to secure only those selected by the assignee, nor was such "election" necessary to fix the right to the lien provided, but the stipulation was simply a protection to the assignee against being compelled to pay more than the given amount, and actual payment would be conclusive on any creditors remaining after the amount to be paid should be exhausted.

In Equity.

On April 6, 1874, John W. Walker and his wife entered into the following contract:

"I, John W. Walker, have this day bargained and sold, and do hereby alien, convey, and confirm, to Martha C. Walker, her heirs and assigns, forever, and to her sole and separate use and benefit, with full and complete power of alienation, as though she was a *feme sole*, the following described real estate, personal property, choses in action, claims and rights, etc., viz.: The real property lying and being in the county of Decatur, state of Tennessee, known as the 'Brownsport Furnace Property,' and now belonging to the firm of Young & Walker, my interest in said firm being one-third, and which said real estate is designated as follows: One tract of eight thousand and eighty-three acres, more or less, and more particularly described in a deed made by David Dick, Jr., to the firm of Young & Walker, which deed is dated the fourth day of December, 1866, and is registered in the register's office of Decatur county, in Book No. 5, pages 645 and 646; also nine hundred and forty-four and one-half acres, conveyed to said Young & Walker, by William Henry, by deed dated December 9, 1867, and registered in said office, Book No. 5, pages 750 and 751; also one other tract of thirty acres, conveyed to said firm by David Welsh, and dated the nineteenth of February, 1872, and registered in said office, Book No. 6, page 441; also another tract of sixty-four acres, conveyed to said firm on the sixteenth day of April, 1872, by deed of Joseph Marion, and registered in said office in Book No. 6, page 483; also nine hundred and forty-one and one-half acres, conveyed by Mack Murphy to said firm by deed dated the twelfth day of April, 1872, and registered in said office in Book No. 6, pages 484, 485, 486, 487; also a tract of four hundred and twenty-eight and one-half acres, conveyed to said firm by Jonathan Leister, in 1867, and registered in said office, and is bounded by the lands of said Walker & Young on the south and east of said Henry tract. All of the deeds of said lands as registered are here referred to and adopted for a more particular description of the same, and all of said lands constitute twelve thousand acres; more or less, and are in part bounded by the Tennessee river on the east; and on the north by the lands of the heirs of Wallace Dixon and Paul Fisher and Lewis Hendel; and are bounded on the west by the lands of Wm. Yarborough's heirs, P. Ferguson, John Blount, and J. J. Steagold; on the south by lands of Jonathan Leister, James Mancey, W. D. Wyatt, James Yarborough, Mrs. Yarborough, Gannaway Jennings, J. G. Yarborough, L. D. Crowley, and the lands of Thomas McClanahan,—to have and to hold to the said Martha Walker, her heirs and assigns, forever. And I covenant that I am lawfully seized and possessed of one-third interest in said land, and have a good right to sell the same. Also I convey to the said Martha C. Walker, to her sole use as hereinbefore specified, my entire interest of one-third in all the merchandise in the store-house at said furnace, together with all book-accounts, notes, etc., now owing to said firms, both due and undue. Also all my interest of one-third in mules, harness, oxen, wagons, tools, iron ores, charcoal, wood, pig-iron, bills receivable, cash, etc., and all other personal property connected with said furnace, and necessary to its operation, and now upon said premises; my intention hereby being to assign and set over and convey to said Martha C. Walker all my interest in said firm and copartnership, and sub-

stitute her to all my rights therein, as fully and completely as I can or may, with this exception: Young & Walker have this day conveyed fifty acres of said land, as shown by deed of this date; said fifty acres I reserve, and do not include in this conveyance, although the same is within the general boundaries.

"In consideration of the premises, the said Martha C. Walker agrees and binds herself to assume and pay, or have paid, all the just and legal debts of said firm, so far as John W. Walker's interest of one-third partner is bound therefor, and she takes his shoes in respect to the same fully and completely; and, to secure and make certain the payment of said firm's debts, said Walker, for himself and on behalf of said creditors, reserves a full, complete, and perfect lien upon all the property herein conveyed until said debts are paid, and the rights of said creditors are to be in nowise affected by these conveyances, and, as to them, their rights, or they, are to be as though these conveyances had never been made. In further consideration, the said Martha C. Walker further undertakes and assumes to pay or have paid ·the individual debts of said John W. Walker to a sum not exceeding fifteen thousand dollars, and, in paying the same, the said Martha C. is to elect which of said debts she will pay, and the same is to be paid at such times as she and the said creditors may agree upon; and, in order to secure the payment of these debts, a full, complete and perfect lien is reserved upon the real estate herein conveyed, and any balance of said sum of fifteen thousand dollars not used in the payment of said debts is to be paid to said Walker. In further consideration, the said Martha C. Walker is to pay to the said John W. Walker, for and during the term of his life, the sum of one thousand dollars a year, to be paid half-yearly from the date of the acknowledgment and probate of this conveyance, in installments of five hundred dollars; and, to secure the payments of this annuity, said Walker retains a lien upon the realty conveyed. In further consideration of this conveyance said Martha C. Walker hereby releases all the estate, present or future, of said John W. Walker, from any claim she now has or may have as his wife, his widow, or otherwise; and said Walker hereby declares the said Martha C. a *feme sole*, as regards all the property herein conveyed, or its proceeds, and forever renounces all his rights to any estate she now has, or may hereafter acquire, either as husband, survivor, or otherwise, and confess full and complete power of alienation of all or any part thereof upon her, without his assent thereto, that being given herein, and to be exercised by her alone; subject, however, to all the liens herein reserved, which liens are to continue until the several sums secured thereby are paid and discharged.

"*This April* 6, 1874.                        JOHN W. WALKER.    [Seal.]
                                             "MARTHA C. WALKER.  [Seal.]

"Acknowledged before the clerk of the county court of Davidson county, by both parties, on the ninth of April, 1874. Registered in register's office of Decatur county, in Book No. 7, page 220, on the sixteenth of April, 1874."

Prior to this contract, Walker and Charles B. Young, as Young & Walker, had carried on a successful iron-manufacturing business, but domestic troubles arose, which it was the object of this contract to end. Soon after it was executed there was a divorce. Mrs. Walker married Young, and they carried on the business in the same firm name, paying Walker his annuity, and certain of the debts, until they failed, and Young, on the sixth of March, 1876, filed his petition, and was adjudged a bankrupt. There was a composition in bankruptcy, and Young conveyed the whole property; his wife joining to convey her one-third, held under the foregoing contract, to trustees under the composition. These

were authorized to borrow money, and conduct the business, which they did, disastrously.

The mortgagees under this arrangement filed their bill in the federal court of bankruptcy on March 18, 1881, to foreclose the mortgages made by the composition trustees, which was done on April 27, 1882, and the plaintiff here, Samuel F. Hunt, became the purchaser at a sale made July 1, 1882. Long prior to this, however, on May 16, 1876, Walker, whose annuity was in arrears, filed his bill for the execution of the fore-going contract in the chancery court of Decatur county, where the property was situated. He died in 1878, and his administrator, Jacob F. Fisher, continued to prosecute the suit, obtaining a decree of sale, for the amounts due on the annuity, and to the creditors, both partnership and individual, who had come into that suit, and also into an administration suit filed July 11, 1880, in the same court, upon an allegation of insolvency. This decree was made March 22, 1883. But on September 19, 1876, Baxter, the receiver for a bank at Nashville, holding an individual debt against Walker, had filed his bill in Davidson county, where Young and wife resided, against them, Walker and the bankrupt trustees, alleging that his debt had been "elected" by Mrs. Young under the foregoing contract, and he prayed to have it paid by a sale of the property. One or two other creditors came in, and claimed to be also "elected" by Mrs. Young, and there was a decree of sale. The creditors in this decree agreed to buy for joint account, and one Hunt became the purchaser for $100; but he assigned his bid to the plaintiff here, Samuel F. Hunt, and the title was decreed to him, he also being the assignee of all the debts interested in the decree. This decree of sale was made June 22, 1880, and the sale was had on November 5, 1881. After Walker's death, and on October 31, 1879, upon *scire facias* duly served, this suit had been revived against Fisher, his administrator. Walker had filed an answer before he died, admitting the contracts, and setting up certain defenses he claimed against the right of the Baxter debts to share in the security. Fisher, the administrator, paid no attention to the *scire facias* served on him, nor to the suit at Nashville. It is proved that he was quite an ignorant man, and he did not comprehend the proceeding. Elizabeth Hunt, and one Trafford, as administrator of Gaylord, filed petitions, and they were admitted as creditors, and these and the Baxter debt are assigned to the plaintiff here.

Having thus acquired title to the whole property under the bankruptcy bill, and to this one-third under the Baxter bill, Samuel F. Hunt, on July 24, 1883, filed his bill in the chancery court of Decatur county, setting up his title, and praying that Fisher, the administrator of Walker, should be enjoined from proceeding under his decree of sale. This bill was filed only against Fisher and the clerk and master who had been appointed to make the sale. He obtained the fiat of the chancellor for the injunction, and then removed the cause to this court, where a motion to remand which was overruled. Thereupon the creditors whose claims had been allowed in the decree which had been enjoined, filed a petition, asking to be made parties defendant, and for leave to file a cross-bill, claim-

ing a benefit under the contract, setting up the inadequacy of price, a combination of bidders, and other matters alleged against Hunt's title. The court made an order requiring the plaintiff to amend his bill, and make these petitioners parties defendant, on pain of remanding the cause to the state court, or dismissing it, as the defendants might elect. The amended bill was filed, and leave given the defendants to file a cross-bill, which they did, setting up their claims under the contract and the state court proceedings, attacking the plaintiff's title, asking that he be restrained from claiming under it, and for an execution of the contract. The proof shows that the property was, at the time of the sale, very valuable, the witnesses differing in their estimates; and that now it has greatly increased in value, some estimates making it as high as $200,000. The other facts appear in the opinion of the court.

*J. C. Bradford*, for plaintiff.

*Pitts & Hays* and *Porterfield & Hawkins*, for defendants.

HAMMOND, J. But for *Bondurant* v. *Watson*, 103 U. S. 281, 287, I should have remanded this case; as to retain it would seem a violation of section 720 of the Revised Statutes, which prohibits the courts of the United States from staying proceedings in the state courts. It has seemed to me that the reason of that statute, the mischief sought to be prevented by it, and its prohibition, apply as well to a final decree staying a state court proceeding as to that stay which comes of a preliminary injunction, and that it operates, necessarily, to exclude from the broad language of the act of March 3, 1875, (18 St. 471, 472; Rev. St. [2d Ed.] § 738,) all cases sought to be removed which have for their object any stay of the proceedings in a state court. Otherwise the federal courts acquire, by removal, a power heretofore denied to them, for substantial reasons, which all commend, and without any directly manifested intention of congress to repeal the prohibition. Yet the case first cited, and *Smith* v. *Schwed*, 6 Fed. Rep. 455, confine the statutory prohibition wholly to preliminary injunctions; so that, while we cannot stay the state court's proceedings in the beginning of a case, we may at the end of it,—a distinction certainly not indicated by section 720 of the Revised Statutes, and, possibly, not contemplated by the removal act of 1875. This is now referred to because the plaintiff, who brought this case here from the state court, insists that we cannot sit as a supervising court to review the proceedings of the chancery court of Davidson county, through which, by a sale, he acquired his title; yet this title he seeks to protect by asking us to enjoin the further proceedings of the chancery court of Decatur county, wherein the defendants have procured a decree of sale. Undoubtedly it would have been better for all parties to have remained in the state court. By the consolidation of this case with that the defendants had brought through the administrator of Walker, or by the concurrent hearings of the two cases, this controversy might have been settled. But, separated, as they have now been, by the plaintiff's removal of this case, that method of bringing the parties together was not available; and the defendants thereupon objected here

that they should not be enjoined from proceeding in the state court, unless they were given an opportunity here to make defense, and, by cross-bill, to seek the relief, by foreclosure sale, that they were there attempting to procure. But the difficulty was that the plaintiff had not made them parties to his bill, and on their motion he was required to amend and bring them in. Of that order he now complains, and asks to be allowed to dismiss the amendment.

But, aside from the prohibition of the statute already referred to, there can be no doubt of our jurisdiction, or that of any court of equity, to grant the relief prayed, either by the bill or cross-bill. It is a controversy over the title to the property, and the fact that either side claims through judicial proceedings is immaterial. Mr. Justice BRADLEY shows this conclusively when he says:

"In such cases the court does not act as a court of review, nor does it inquire into irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it." *Johnson* v. *Waters*, 111 U. S. 640, 669, 4 Sup. Ct. Rep. 619; *Barrow* v. *Hunton*, 99 U. S. 80, 83.

But the difficulty of giving that full relief which, in cases as complicated as this has been, a court of equity desires to grant, could only be overcome by the order that was made, that the parties in interest who had been left out of the bill should be brought into it. Although the administrator of Walker was a party defendant to plaintiff's bill, and it was he that was injured by it, yet the real actors were the creditors who were seeking to realize their debts by enforcing the security Walker had provided for them. These the plaintiff left out, and now insists that this administrator must stand for Walker, and in his shoes, so far as necessary to enable plaintiff to estop him, in that capacity, from prosecuting his suit in behalf of the estate of Walker, but that he does not represent the creditors, and cannot set up *their* rights under the contract. For this very reason they should have been made parties to this bill, particularly as they were parties to the proceedings sought to be enjoined, —if not technically such, substantially so, by the filing and prosecution of their claims in that suit. The notion that Walker's administrator can be brought into this bill to represent Walker himself, but may be left out as a representative of the creditors, and that, the creditors themselves being also left out, the plaintiff has the advantage of excluding all consideration of their rights until they take some independent proceeding, is wholly untenable. The truth is, these new defendants should have been made parties to the Baxter bill, filed in Davidson county, under which plaintiff claims title, either as defendants or as plaintiffs, in whose behalf as well as his own Baxter should have proceeded, and the failure to make them such is the very foundation of their right to complain against him. Whatever else may be said of the contract by Walker, of April 6, 1874, as between him and his creditors, it was an assignment for their benefit. One of them, ignoring the others, in a county distant from that

in which the land lay, and from his residence, finding other parties to the contract there, filed a bill against Walker, his lately divorced wife, and her new husband, to foreclose the security for his own benefit alone. She was not a trustee for the creditors in any sense that she represented them as a party to the suit, but was a purchaser from and a guarantor to Walker, the debtor. Walker did not represent those creditors in any sense whatever. The bill was not filed in behalf of the plaintiff creditor, and others who might come in, nor did it give any excuse for not making them parties,—such as that they were too numerous, or were unknown after diligent inquiry to discover them, or were non-residents, or the like. This was clearly a violation of that procedure which governs a court of equity in such cases, and enabled that creditor to do what is here insisted upon shall be continued, namely, exclude the other beneficiaries, and take the property. The other creditors should have been made parties. Jones, Morig. § 1394 *et seq.;* Id. 1398; 1 Daniell, Ch. Pr. (1st Ed.) 329; Id. (5th Ed.) 190 *et seq.*

It is true, the holders of the legal title being before the court, the irregularity was such that, possibly, if a purchaser had bought at an adequate price, and paid his money into court, his title would not have been disturbed, but the discarded beneficiaries would have been left to follow the proceeds, as in *Re Howard,* 9 Wall. 175, and *Williams* v. *Gibbes,* 17 How. 239; and consult *Myers* v. *Fenn,* 5 Wall. 205, and 2 Daniell, Ch. Pr. (5th Ed.) 1205.

But in this case it is urged that the creditors should be left to assert their rights against the purchaser by some independent proceeding, while he, in the manner already suggested, shall be allowed to restrain *the administrator* on the ground that, Walker having been a party, the *administrator* cannot be allowed to seek another sale. In addition to what has been already said on that subject, it may be remarked that the administrator, under the Tennessee system, or creditors, may proceed to enforce such securities, and the administrator possesses a dual capacity of representation,—one for the debtor, and the other for the creditor. If he be estopped in one, it does not necessarily follow that he is estopped in the other, and certainly not that the creditors are estopped in a case like this, where they have a specific lien to sue in their own behalf; and, as already shown, it is a proper practice to compel a plaintiff to bring in proper parties.

But here there was another abundant reason. The plaintiff is a non-resident of Tennessee, where this land lies, and, if he were the only necessary party, there might be difficulty in filing a bill against him in this state, and hence the land could be reached only by the roundabout way of a bill against him in Ohio to compel him to convey it, or share it with the other beneficiaries. So, when he comes here to file his bill, it is eminently proper that the other parties in interest should be allowed to come in, and make themselves parties, and that he should not be allowed to exclude them by the simple process of leaving them out, in continuation of the policy of exclusion inaugurated when the bill under which he claims title was filed.

The result is that the motion of the plaintiff to be allowed to dismiss his amended bill, and to vacate the order compelling him to file it, should be denied. A plaintiff has not always the privilege of dismissing his bill at pleasure. *Stevens* v. *Railroads*, 4 Fed. Rep. 97.

The decision of this question, upon the foregoing reasons, almost disposes of the plaintiff's case. That he is not entitled to restrain the other creditors, who had an equal right with the plaintiff in the suit through which he acquired his title, from proceeding to realize *their* share of the security in the same way that that plaintiff realized *his* share, is too plain for any argument. They, not being parties to the decree of sale under which he bought, are not bound by it; and why, then, should they be enjoined from acquiring any title they may in hostility to the plaintiffs? The only possible ground on which the plaintiff could appeal to a court of equity is that, after a purchase of the legal title,—if he can be said to have acquired that title on the facts of this case relating to the circumstance that this was *partnership* land, into the complications of which we need not go,—he should have been made a party to the proceedings of the chancery court of Decatur county, in which the decree of sale he seeks to enjoin was had. But one branch of that proceeding was commenced before the bill under which he claims was filed, and the other— the insolvent proceeding—before he purchased, and *he* it was who bought *pendente lite* as to both those proceedings. Besides, the other creditors had a right to proceed, treating his title as a nullity, until they, or the purchaser under their sale, should acquire whatever title they might, and try conclusions with him in an action of ejectment.

Perhaps another contention of the plaintiff should be noticed here, if only to announce a conclusion of the court already intimated at the argument; that is, that these creditors do not show that they were ever "elected" by Mrs. Walker, and, not having done so, are entitled to no share in the security, and should, for that reason, be enjoined. This is a misconception of the instrument, we think. It was not the intention to be gathered from the deed that only such creditors as she might choose should be paid. It was not *a power* conferred on her for that purpose, but simply a privilege, given as a protection against paying more than $15,000, if there should be a larger amount due, or, in other words, that, having paid creditors to the extent of $15,000, she should not be compelled to pay any others; and, in that sense, she would have "elected" to pay those who had received payment from her, and *the fact of payment* would be conclusive of the right to receive under this stipulation. It was a convenient way of protecting her against larger payments; but, evidently, the parties contemplated that not so much was really due, and provision is made that the balance of the $15,000 should go to Walker himself. Therefore no creditor could be excluded under this stipulation, unless it could be shown that the $15,000 had been exhausted, which would be the same thing as showing that she had "elected" the creditors she would pay. Nothing like that is shown here, but, on the contrary, the inference is that it has not been exhausted by any payments made by her. In this view that stipulation does not aid the plaintiff.

We come next to the question of inadequacy of price, and about that a statement of facts leaves but little else necessary to be said. That property, worth then and now many thousands of dollars, should be sold for $100, seems impossible, but more impossible is it that a court of equity should establish the title on the facts of this case. *Clark* v. *Trust Co.*, 100 U. S. 149, 152; *Eyre* v. *Potter*, 15 How. 42, 60; *Erwin* v. *Parham*, 12 How. 197, (L. C. Pub. Co. Ed. and note;) 2 Abb. Nat. Dig. (Ed. 1885,) 592, § 14, and cases cited.

Young had become bankrupt in March. In May, Walker filed his bill in Decatur county, where the land was situated, for the execution of the contract. In June there was a bankruptcy composition, and in August a deed by Young and wife to trustees in pursuance of its terms. In September, the bill under which plaintiff claims was filed, under the circumstances already stated, in Davidson county. Walker, who was only interested as a creditor for his annuity, and any share of the $15,-000 not exhausted in paying debts, and who already had a bill of his own pending in Decatur county, filed an answer in October. Then followed the efforts of the trustees under the bankruptcy composition to extricate the property by a mortgage, and a continuance of business with the furnace, which proved futile and disastrous. Meantime, Walker had died insolvent, and, as the proof shows, was never at any time able to protect the property or his interests, either in his own behalf, or in that of those creditors who had been ignored by the bill under which plaintiff claims. Young and wife were not able to protect it or the creditors. The bankruptcy trustees had only further involved it. Fisher, the administrator of Walker, as the proof shows, was an ignorant man, and did not comprehend the *scire facias* served upon him, and neglected it. But, suppose he had comprehended it, what could he have done? The estate was insolvent, and he had no funds, either to carry on the litigation or to purchase at the sale. So, when the sale took place in November, none of the joint beneficiaries were in a position to protect their interests at the sale by forcing a larger price, and making the property sell for enough to pay all the debts secured, nor were they in such a relation to the case as to be bound to do that, and to be precluded, if the property did not bring enough, as of their own fault. The circumstances were calculated to deter bidders, and depreciate the property. Leaving others interested out of the bill was in itself sufficient to secure a small price for the property, and drag it down at the sale. Again, Baxter's bill was constructed on the erroneous theory that no creditor, not "elected" by Mrs. Walker, [Young], could share in the $15,-000. But this did not apply to Walker himself, whose interest in that question might be identical with Baxter's, since he would get the surplus. Nobody was made a party to contest that theory, and it could not be settled by that bill. Hence, any person contemplating to become purchaser, being well advised, would conclude that the bill, in the absence of all proper parties, was so ill framed as to render the title doubtful, and this would invite inadequacy. An advantage of a small price, gained under such circumstances, cannot be maintained under any rule upon that subject known to the books.

But let us look a moment somewhat further, at the attitude of Walker, and of his administrator. Why was he a party defendant to that Davidson county bill at all, and what relief could be had upon its allegations as against him, and as to which he or his administrator is now estopped by the *res adjudicata?* The legal title was not in him, nor any title. He was a creditor for his annuity, postponed to all other creditors, and had a lien, for the enforcement of which he had the same right to pursue the land by his bill in the county where the land was that the plaintiff in the Davidson county bill had to pursue it there, where the Youngs resided. Being made a party defendant did not affect that right or his bill. If the Davidson county creditor could go alone, so could he, and neither could affect the other creditors or represent them. As the debtor, he was a proper party, no doubt, on the defendants' side of the case, but as a creditor he belonged to the plaintiff's side; but he was not bound to assume that relation in that suit, having a bill already pending in Decatur county, filed before this Davidson county bill was filed. If the first bill filed obtained the jurisdiction, the Davidson county plaintiff should have gone there, rather than bring Walker to his forum. As a debtor, the decree against him could be only for the debt, and to that extent · would be bound, and not further. Indeed, the prayer of the bill seeks no other relief against him, nor is there in it any allegation or statement to bind him *as a creditor* to take his share of the lien under that proceeding; nor does the decree of June 22, 1880, give any relief against him, and there is nothing in it to preclude him from following any remedy he may have against the land to enforce his lien. He was enjoined, along with the Youngs and the bankruptcy trustees, from disposing of the one-third interest, but, as far as I can see, there was not in the bill, or the proceedings, anything to bind him in his capacity as a creditor for his annuity. So far as I can see, he might have let the bill go by default, without the least injury to his rights, except to preclude him from denying the Baxter debt as a proper charge against him, and as entitled to share in the security he had provided for it and the other debts. Baxter did not recognize him as a creditor, did not invite him to share in the proceeds as such, nor sue in his behalf, any more than he did in that of other creditors. He did not attack his claims under the contract, nor suggest anything against his right to a share of the common security, nor ask any decree against him in that regard; and yet now the plaintiff, claiming through Baxter and a sale under his bill, asks that Walker, or his representative, be excluded from all share in the security, as if there was something within the scope of his bill to preclude him from doing so, on the principle of *res adjudicata.* But there is not. Why, therefore, should he be enjoined, then or now, from prosecuting his Decatur county bill to secure his annuity, or the balance of the $15,-000, after the payment of his individual debts? There is absolutely not the slightest reason arising out of the Baxter bill, on any principle of estoppel or *res adjudicata.*

When, therefore, Walker's relation to *the plaintiff in this case,* in his capacity of *purchaser* of the one-third interest, comes to be examined, his administrator stands just as any other creditor would, having a lien under

the contract, and just as the other defendants here do. The notion that there is anything in the bill of *Baxter, Rec'v'r*, v. *Young and others*, or the proceedings subsequent to the bill, to bind him to the purchase any further than the other beneficiaries are bound, is wholly illusory, and grows out of the bare fact that he was a defendant to that bill. But being a defendant did not bind him to anything except the relief sought and decreed against him, and there is nothing decreed against him as a creditor and co-beneficiary. I thought at the hearing, and so intimated, that he, at least, could not pursue the lien in his favor, as against the plaintiff here, the purchaser. But it only requires the inspection of the record carefully to see that he is bound no further than I have indicated, namely, *as a debtor*, and that, *as a creditor*, he was not bound to take his share of the security in that case. He was not asked to do so, and his right to take elsewhere was not denied. Prior to that bill he had filed his own, and this did not interfere with him. If the purchaser, as before stated, had given a fair and adequate price, he might have had the equity of saying to Walker and the other beneficiaries that they must pursue the fund paid into court, or the creditors who had unduly appropriated a too large share of it, for a refunding of their share; but, having paid only $100, he is precluded from that equity, and, as against Walker or the other co-beneficiaries, he can now take nothing by his purchase because of an inadequacy, under circumstances which avoid the sale, as giving an undue advantage. By the complications growing out of the facts already stated, and the bankruptcy proceedings and sale in that court, to say nothing of the agreement among the creditors interested in the Baxter bill to bid jointly for the property, it was sold under such adverse circumstances that it is not wonderful that it brought only $100. But no court can sustain the plaintiff's title, either as against the other secured creditors or Walker.

I need not say that the fact that the plaintiff has become the assignee of all the debts sued for in the Baxter bill does not strengthen his position on this question of inadequacy. He cannot tack the relation of creditor to that of purchaser, for obvious reasons, and thereby better his title. The parties secured by the contract had the right to have the property sold under such propitious circumstances as would bring the most money, and the plaintiff here, not having advanced his bid or given a fair price, cannot have the property. The utmost equity he can claim is to come in as a secured creditor along with the rest, take his place in the line of rank to which he belongs, under the contract of April 6, 1874, and receive his share of the proceeds of a fair foreclosure sale. As a purchaser at the bankruptcy sale, he represents Young and wife as to this one-third, as well as the other two-thirds there purchased; and, if there should remain a surplus after paying all the claims secured by the contract to be foreclosed, the plaintiff would be entitled to that.

Again, it may be worth nothing that the suggestion of insolvency of Walker's estate was made January 1, 1880, and before the decree on the Baxter bill, and (if it were necessary to strengthen the position of the defendants) operated, possibly, as a statutory injunction, under our in-

solvent laws, against any further procedure with the Baxter bill except by leave of the insolvency court. But I do not deem it necessary to go into that.

Having reached this conclusion, the next matter to be determined is the nature of the decree to be rendered. My own judgment was and is that, strictly and technically, the decree should be simply to dissolve the plaintiff's injunction, and on the cross-bill restrain him from claiming the benefit of any title he here sets up to the property in controversy, as against any of the defendants, thus allowing them to proceed with their decree in the Decatur county chancery court, and leaving the plaintiff to protect himself as best he may, by application to that court, where the first bill was filed, to execute the contract. This seems to me the better course, because of those considerations growing out of the possession by the state courts of the jurisdiction which has been impeded by this bill, and that resulting comity which I so like to preserve and observe in all cases. But the parties on both sides are averse to this, and anxious to close the litigation here and now, in a court where, for the first time, all those interested in the property are met upon equal terms as to their opportunities to present their respective claims. Yielding to this desire, I am willing to go further than indicated, and, upon the cross-bill, to execute the contract as it has been suggested the rights of the parties require.

At first I thought that perhaps the partnership creditors claiming here should be postponed until the others had been satisfied, on the ground that they do not show why they have not been otherwise paid out of the partnership assets; but I can see, from the record, that there is a strong presumption that those assets have been applied to other partnership debts, or wasted without fault of those here presenting their claims. This was originally partnership property, and, by the contract, partnership creditors stand first, and the individual creditors next, and then Walker for his surplus of the $15,000, if any, and the annuity unpaid up to his death. The claims represented by the plaintiff will take their place in either class to which they belong. The plaintiff will be declared the trustee of the legal title for the benefit of all concerned, under the decree of this court, and, unless he choose to pay the amounts due, and the costs properly chargeable, within 90 days from the date of the decree, the property involved will be sold by John B. Clough, as special commissioner, upon such terms as to the time and place and mode of payment as the parties may agree upon in the decree to be entered, or to be hereafter fixed by the court. And, if the parties cannot agree as to the amounts to be so paid by the plaintiff, and to be fixed by the decree, there may be a reference to said commissioner to report *instanter*, from the proof, the said amounts, and the costs properly chargeable, including the costs of this case, so that the decree may definitely ascertain the said amounts. And he will likewise report the order of priority. So ordered.