HENRY. WILLIAMS *et al.* Appellants, *vs.* WILLIAM M. LANG-WILL, Appellee.

*Opinion filed October 26, 1909.*

DEEDS—*when a deed will not be set aside for grantee's alleged failure to keep agreement.* While a deed from parent to child will be set aside in equity if the grantee refuses to keep his agreement to live with and support the grantor for life, yet where the grantor is the moving party in the transaction, which he enters into deliberately and without fraud or undue influence by the grantee and by his own act prevents the grantee from keeping his agreement, the rule does not apply and the deed will not be set aside.

APPEAL from the Circuit Court of McHenry county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

SHURTLEFF & HEIZER, and JAMES F. CASEY, for appellants.

CHARLES H. WAYNE, and V. S. LUMLEY, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by John J. Evans in the circuit court of McHenry county, against William M. Langwill, to set aside and cancel as clouds upon his title to a farm containing one hundred and seven acres, situated in McHenry county, a deed from said John J. Evans bearing

date January 9, 1904, conveying said farm to said William M. Langwill; also certain articles of co-partnership entered into on said ninth day of January, 1904, between said John J. Evans and William M. Langwill, whereby they agreed to carry on the farming and dairying business upon said farm during the life of the said John J. Evans, which deed and articles of co-partnership were filed for record and were recorded in the recorder's office of McHenry county. A guardian *ad litem* was appointed for William M. Langwill, he being a minor, who filed an answer on behalf of said defendant, and said John J. Evans having died testate on December 7, 1904, and his will having been admitted to probate, and James F. Casey, the executor named in the will, having qualified, and James F. Casey, Henry Williams and John E. Williams, the legatees named in said will, having been substituted as complainants, they, by leave of court, filed an amended bill. The guardian *ad litem* of said defendant filed an answer thereto, and a replication was filed to said answer. The case was referred to the master in chancery to take the proof and report his conclusions as to the law and the facts, and the master in chancery having filed a report, in which he recommended that the bill be dismissed for want of equity, and objections and exceptions having been overruled to said report, the court entered a decree in accordance with the recommendations of the master in chancery, dismissing said bill for want of equity, and the complainants have prosecuted an appeal to this court to reverse said decree.

It appears from the pleadings, proofs and master's report that John J. Evans and wife resided upon said farm, as their homestead, at the time of the death of the wife of John J. Evans, which occurred in the summer of 1902; that Mary J. Langwill, who had married Charles Langwill, was the only child of John J. Evans, who survived his wife; that Mary J. Langwill and her family, at the time of the death of her mother, resided at Watertown, in the

State of South Dakota; that at the time of the death of her mother Mrs. Langwill returned to Illinois to attend her funeral; that John J. Evans was then about eighty years of age; that he then said to Mrs. Langwill that what he had would belong to her and that she ought to return to Illinois and take care of the property; that she replied to him that he had a tenant on the farm, and if he could get along until the next year, if he still wanted her and her family to return to Illinois, they would do so; that she returned to her home in South Dakota; that in the month of August the tenant upon the farm left the farm, and John J. Evans caused to be written to his daughter a letter saying the tenant had abandoned the farm and urging her and her husband to immediately return to Illinois; that upon receipt of the letter they returned to Illinois and moved onto the farm, and carried on the farm until March I, 1903, on the same terms that it had been theretofore rented, and John J. Evans lived with them; that on the first of March, 1903, Charles Langwill, the husband of Mary J. Langwill, rented the farm for five years at $250 per year cash rent and purchased the stock and farming implements of John J. Evans on the farm for $700, for which he gave his four promissory notes, and John J. Evans was to make his home with Charles Langwill and family; that Charles Langwill and family continued to occupy the farm until the ninth day of January, 1904, when John J. Evans and Charles Langwill, being unable to agree, then went to the office of V. S. Lumley, an attorney at law residing in McHenry county, to adjust their differences, whereupon it was agreed that Charles Langwill was to surrender the lease of the farm, and he, with his wife and daughter, would return to South Dakota, and that Charles Langwill would release to William M. Langwill, the defendant, who was then about twenty years of age, his time until he should attain his majority; that William M. Langwill would remain on the farm with his grandfather, and that John J.

Evans and William M. Langwill would carry on the farming and dairying business together upon said farm, and that John J. Evans should surrender the notes of Charles Langwill to him and pay him $100 in cash, and that the stock and implements upon the farm, which consisted of twenty head of cows and one bull, and certain farming implements, should be turned over by Charles Langwill to William M. Langwill, and that William M. Langwill should reside with and care for John J. Evans in his old age and pay his funeral expenses after his death, and that upon the death of John J. Evans all the property which belonged to the co-partnership should be the property of William M. Langwill, and that the farm was to be conveyed to William M. Langwill, John J. Evans reserving a life estate therein; that V. S. Lumley thereupon prepared a deed for the farm from John J. Evans to William M. Langwill, conveying the same to William M. Langwill in fee, subject to a life estate in John J. Evans, and also articles of co-partnership between John J. Evans and William M. Langwill, and an agreement to be signed by William M. Langwill, in which he agreed to remain with John J. Evans upon the farm and to care for him during his life and make his old age comfortable and to pay his funeral expenses after his death, also an assignment of the interest of Charles Langwill in said personal property to William M. Langwill; that all of said instruments in writing were executed by the proper parties, the $100 in cash was paid by John J. Evans to Charles Langwill and the personal property was turned over to William M. Langwill, and Charles Langwill and wife and daughter on or about the first day of March left the farm and prepared to return to South Dakota, where they returned within a few days; that John J. Evans, after his son-in-law had given up the farm, found some difficulty in procuring a housekeeper, and that shortly before March 1, 1904, he leased the farm to a man by the name of Ernest Rammein and placed him in possession of the farm on

March 1, 1904; that shortly after the farm was leased to Rammein it was arranged between John J. Evans and William M. Langwill that as the farm had been leased and there would be nothing there for William M. Langwill to do he should return with his father and mother to South Dakota, where he could obtain work at from $40 to $45 a month, and that he should keep an account of his wages, and that he would put in one-half of his wages against one-half of the income of the farm; that William M. Langwill returned to South Dakota with his father and mother and sister; that on the 24th day of March, 1904, the barn in which the cows left upon the farm were kept was blown down and all of the cows but two were killed; that the tenant thereupon left the farm; that John J. Evans never asked the defendant to return to the farm, but on the second day of July, 1904, filed this bill to set aside all the transactions between himself and William M. Langwill and to recover back the farm, the bill being framed upon the theory that a confidential relation existed between John J. Evans and William M. Langwill, and that William M. Langwill had failed to keep and perform the part of the contract upon his part whereby he agreed to live with, care for and make comfortable John J. Evans for the remainder of his life, it being averred that by reason of the fact that William M. Langwill had left the farm and returned to the State of South Dakota a presumption obtained that at the time the deed and articles of co-partnership were entered into a fraudulent intent existed in the mind of William M. Langwill not to carry out said contract but to cheat and defraud John J. Evans out of his property, and a line of cases, of which *Fabrice* v. *Von der Brelie*, 190 Ill. 460, and *Hensan* v. *Cooksey*, 237 id. 620, are examples, are relied upon to sustain the bill.

It is undoubtedly the law of this State that where a child takes advantage of a parent, or one standing to him in the relation of parent, and by reason of such relation ob-

tains a conveyance of the property of the parent to him upon a promise upon his part to care for and support the parent in old age, and after the conveyance is made repudiates his agreement to furnish the parent maintenance and support, a court of equity will set aside the conveyance and restore to the parent his property. (*Cooper* v. *Gum,* 152 Ill. 471; *McClelland* v. *McClelland,* 176 id. 83.) If it appears, however, that the parent is the moving party, and that he entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation between the parties might be supposed to give rise, and the child has been prevented from executing the contract on his part by the acts of the parent, the rule above announced does not apply. In this case, while the grandfather was an old man at the time he made the deed and entered into the articles of co-partnership, he appears to have been fully possessed of his faculties, as subsequent to the execution of the deed and articles of co-partnership he executed the will under which the appellants now claim, and the grandchild was a minor who was largely under the influence of his grandfather, and who was largely influenced by the grandfather rather than the grandfather influenced by the grandchild, and that the grandfather was well satisfied with the arrangement he had made with the grandchild until after William M. Langwill had left the farm and returned to the State of South Dakota.

We have read the evidence in this case in full as it appears in the record, and are constrained to hold that it fails to bring this case within the principle of the cases relied upon by the complainants. It may be that John J. Evans was injudicious in making the deed and the contract he did. It, however, doubtless appeared to him at that time that it was for his interest to induce the grandson, if possible, who appears to have been a worthy young man and who always treated his grandfather with kindness and con-

sideration, to remain with him on the farm; and the fact that John J. Evans may have changed his mind with reference to the disposition of his property after William M. Langwill had returned to South Dakota, if he fairly entered into the arrangement he made with his grandson, would not permit him to repudiate the obligations which he had assumed and abandon the same without cause and recover back his property. In *Campbell* v. *Carter,* 14 Ill. 286, on page 291, the court say: "A court of equity will not interfere to relieve a party from the effects of an injudicious bargain." And in *Dickerson* v. *Evans,* 84 Ill. 451, on page 453, it was said: "If a party making a deed be of an advanced age * * * and illiterate, if the deed be read to her and her rights made known to her by the officer, public policy, the stability of titles, the peace of society, all demand the transaction shall not be disturbed." And in *Herr* v. *Payson,* 157 Ill. 244, on page 252, the court use the following language taken from the case of *Ulrich* v. *Muhlke,* 61 Ill. 499: "We have examined the rule of equity invoked by the complainant as applicable to such cases, and no commentator on the principles of equity, and no reported case, goes to the extent of saying that by force of such relation a deed is *ipso facto* void. * * * To render such a transaction valid it is only necessary to show that the other party had competent and disinterested advice, or that he performed the act or entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation might be supposed to give rise."

We are impressed with the fact that all the equities of the case are with the appellee, and that the circuit court reached a just and equitable disposition of the questions involved upon this record.

The decree of the circuit court will be affirmed.

*Decree affirmed.*