WINDHAM RICHARD HARDAWAY, Appellant, v. WILLIAM SHERMAN HARDAWAY.

Division One, March 2, 1920.

CONVEYANCE: Voluntary: No Consideration: Cancellation: Lien. A deed made by a grantor in full possession of his faculties and in no wise induced by undue influence or fraud, but voluntarily and of his own volition and without any agreement or promise on the part of the grantee, either directly or through others, to either pay money therefor or to support and care for the grantor in his old age, but made in pursuance of a long-cherished purpose to so dispose of the land, either by deed or will, that the grantee would own it after the grantor's death, cannot be set aside, nor can a lien be declared on the land for supposed damages.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*J. M. Leavitt* and *Herman Pufahl* for appellant.

(1) The fiduciary relation having been shown to exist between plaintiff and defendant, the law presumes that the deed was obtained by undue influence. Cadwallader v. West, 48 Mo. 483; Kirschner v. Kirschner, 113 Mo. 297; Ennis v. Burnham, 159 Mo. 518; McDermeitt v. Keesler, 240 Mo. 287; Kincer v. Kincer, 246 Mo. 419. (2) The deed should be set aside for failure of con-

sideration. Respondent admits he paid nothing. His unreasonable story about paying the recited consideration of one dollar in work is too ridiculous to merit consideration. The only thing it tends to prove, is that it is not intended to be a gift of the land. The appellant testified that he received nothing and would not have executed the deed but for the fact that he expected Sherman to care for him in his old days and look after the farm, and that these promises induced him to make the deed, and that but for them he would not have executed the deed. Haataja v. Saarenpaa, 118 Minn. 255; Grimmer v. Carleton, 93 Cal. 189; Lane v. Lane, 106 Ky. 530; Jenkins v. Jenkins, 3 B. Mon. 237; Reynolds v. Reynolds, 234 Mo. 155. (3) The refusal or neglect of the grantee to carry out the agreement to care for his foster father, and also his refusal to look after the farm raises the presumption that he did not intend to do so in the first instance and therefore the deed was fraudulent in its inception. Seymore v. Belding, 83 Ill. 222; McClelland v. McClelland, 176 Ill. 83; Fabrice v. Von-der-Brelie, 190 Ill. 460; Stebbins v. Petty, 209 Ill. 291; Sherrin v. Flinn, 155 Ind. 422; Cree v. Sherfy, 138 Ind. 354; Tomlinson v. Tomlinson, 162 Ind. 530; Spangler v. Yarborough, 23 Okla. 806. (4) A deed is a contract, and in order to make it a valid instrument, there must be a meeting of the minds of the parties to it. The appellant, testified that he was induced to make the deed under the belief that the respondent would live with him, care for him in his old days and look after the farm. Respondent denies that he agreed to do any of these things. Clearly, then, there never was a meeting of mind of the parties to the contract, and it should be set aside. Falls Wire Mfg. Co. v. Broderick, 12 Mo. App. 383; Robinson v. Estes, 53 Mo. App. 585; Perkins v. School District, 99 Mo. App. 487; Luckey v. Frisco Railroad, 133 Mo. App. 593; Green v. Cole, 103 Mo. 76; Cockrell v. McIntyre, 161 Mo. 69. (5) Under all rules of justice and equity, the deed should be set aside. To permit the respondent, a young, healthy and robust man to retain the title to the land would be a travesty on justice. Within a year

after obtaining the deed, he abandons his foster parent and leaves him in a position, so that he cannot sell the property to support himself in his declining years. It was not necessary to show a wilful design to defraud. Bishop v. Seal, 87 Mo. App. 261; Hurley v. Kennally, 206 Mo. 282; Reynolds v. Reynolds, 234 Mo. 144; Kincer v. Kincer, 246 Mo. 419; Heimeyer v. Heimeyer, 259 Mo. 515.

*T. H. Douglas* for respondent.

(1) There is no presumption against a voluntary conveyance from parent to child. The burden is not cast upon such grantee unless the relation of trust and confidence is shown by other substantial evidence. No such fiduciary relation is shown by the evidence in this case. State ex rel. v. True, 20 Mo. App. 181; McKinney v. Hensley, 74 Mo. 332; Hamilton v. Armstrong, 120 Mo. 616; Doherty v. Noble, 138 Mo. 25; Hatcher v. Hatcher, 139 Mo. 614; McKissock v. Groom, 148 Mo. 459; Bonsal v. Randall, 192 Mo. 532; Huffman v. Huffman, 217 Mo. 193; Jones v. Thomas, 218 Mo. 508; Lee v. Lee, 258 Mo. 599; Stanfield v. Hennegar, 259 Mo. 50; Bennett v. Ward, 272 Mo. 671. (2) In this case the expressed consideration is one dollar and other valuable consideration. The real consideration is love and affection which is sufficient to support the deed. 13 Cyc. 529, 534; Draper v. Shoots, 25 Mo. 202; Wood v. Broadley, 76 Mo. 23; Studybaker v. Cofield, 159 Mo. 616; Weissenfels v. Cable, 208 Mo. 534; Griffin v. Nickolas, 224 Mo. 275; Chambers v. Chambers, 227 Mo. 287. (3) The finding of the trial court in this case is absolutely correct. In suit to set aside a deed as obtained by fraud, mistake or undue influence, the burden of proof is on the plaintiff, and plaintiff has failed to discharge himself of that burden. Brown v. Foster, 112 Mo. 297; Taylor v. Crocket, 123 Mo. 300; Strong v. Whybark, 204 Mo. 348; Wing v. Havelik, 253 Mo. 502; Turner v. Anderson, 236 Mo. 523; Gibony v. Foster, 230 Mo. 106. (4) Even though plaintiff's contention that defendant promised

to support plaintiff as consideration for the deed, were correct, which defendant does not concede in any particular, still the deed should not be set aside. Anderson v. Gaines, 156 Mo. 664; Lackland v. Hadley, 260 Mo. 572.

GOODE, J.—This is a suit in equity, and the petition is in two counts. The object of the first is the cancellation of a deed made by plaintiff to defendant, and of the second to obtain a judgment against defendant for damages and have a lien declared on the land; the gravamen of both causes being defendant's alleged failure to render the consideration for which the conveyance was made to him.

Defendant was eighteen years old at the time of the conveyance, and twenty years old when the case was tried. When he was twenty-two months old, he was taken into the home of plaintiff, where he was reared by plaintiff and his wife as though he were their son, but never adopted. The testimony shows the relations between the parties were always pleasant; that defendant treated his foster parents, as they may be called, well, and they treated him well. Plaintiff's home was on the land involved in this action; a tract of forty acres in Polk County, Missouri, about two miles from the town of Fairplay.

Mrs. Hardaway, plaintiff's wife, died in December, 1911, and afterwards plaintiff and defendant continued to reside at the home place, "baching it," as they expressed their way of living. Plaintiff appears to have been strongly attached to defendant and to have formed an intention, at some time before the deed in question was made, to leave, by will, his small estate to defendant, although plaintiff had four living children, who were married and settled; some in the vicinity of the farm and others elsewhere. Plaintiff had expressed a wish to dispose of his property so a son-in-law would derive no benefit from it; but this sentiment does not appear to have had much, if any, influence in causing him to make the deed in controversy. Some time before the date of its execution, but how long is not stated, plain-

tiff, according to his own testimony, had executed two wills, giving to defendant by the first everything he had, and by the second, everything he had except twenty dollars to each of his children. There is testimony tending to prove he became apprehensive lest, if he devised his property to defendant, the will would be contested and set aside; and he consulted a neighbor by the name of Turley, about whether it would be better to convey the farm to defendant or make a will in the latter's favor; and Turley told him as far as he (Turley) knew, the deed could be contested as well as a will. Plaintiff finally decided to convey it by deed; and whether or not he did so upon the agreement of defendant to remain on the farm and take care of plaintiff as long as plaintiff lived, is the issue of fact on which the case depends.

On December 23, 1915, plaintiff went to Bolivar the county seat of Polk County, accompanied, at his request, by Turley, and called upon Mr. Cunningham, an attorney. Plaintiff asked the attorney about the effect of the will he had made in defendant's favor, and the attorney said he was unable to advise concerning the effect of the will without seeing it, or whether it would be more prudent to make a deed. At that time, or on a second visit to the office the same day, the attorney told him that a will, properly drawn, was as good as a deed; but plaintiff replied he was afraid a will would be contested. He further stated to the attorney that he wanted the boy (defendant) to have the land, and asked that a deed be drawn so as to convey it to defendant, but with a reservation of the rents and profits to plaintiff while he lived. Turley had left the attorney's office shortly after entering it, and plaintiff left after he had directed the preparation of the deed. The deed was drawn in the form of an indenture, with plaintiff as party of the first part and defendant party of the second part. It recites a consideration of one dollar and "other valuable considerations" paid by the second party. The granting clause contains the words "grant, bargain, sell, convey and confirm;" the land is described

as the northwest quarter of the southeast quarter of Section 30, Township 34, Range 24, Polk County, Missouri, and this reservation is made: "W. R. Hardaway hereby reserves the right to use, occupy and enjoy said real estate and all the rents and profits therefrom during his natural life." Covenants of warranty and indefeasible seisin and against incumbrances follow. Plaintiff returned later to the attorney's office, got the instrument and took it away with him, without signing or acknowledging it. On December 30th he went to Fairplay, called upon the cashier of the bank where he did business, and signed and acknowledged the deed in the presence of the cashier, who was a notary public. The cashier testified he read the deed over to plaintiff, as was his custom when he took an acknowledgment. Plaintiff said nothing about the disposition of his property at the time; but on previous occasions had told the cashier defendant was a good boy and he wanted him to have his (plaintiff's) property. The deed was not delivered to defendant on that day, nor until some time in January, 1916. Plaintiff was then sick in bed and one day, during his illness, he called defendant to him and expressed a fear that he would not get well; at the same time telling defendant to get something out of the pocket of plaintiff's overcoat which was hanging on the wall. Defendant took a long envelope out of his pocket, which contained the deed. Plaintiff remarked: "You know what this is?" Defendant replied he did not. Plaintiff told him to read it; then said : "It is no good unless signed by two witnesses in my presence," and ordered defendant to bring two men to the house next day to witness the deed. Accordingly Joseph Gillispie and Charles Bowman, two neighbors, came to the house the next day at defendant's request, and plaintiff asked them to sign the deed, after which he said: "You men witness me give this deed to Sherman," further saying to defendant: "You can do what you please with it; but if I was you, I would take it to the bank where it would be safe. It might be burned, or something like that, and it will be safe in the bank." He then handed the deed to defendant and asked

him not to record it until he (plaintiff) was dead; to which request defendant made no answer; and, in fact, according to the witnesses, said nothing whatever when the deed was delivered to him.

On February 27, 1916, or about two months after the delivery of the deed, defendant married, with the consent of plaintiff, and brought his wife to the farm, where they continued to live until February 17, 1917; meanwhile the affairs of the house and farm going on as they had previously. There is no testimony to show any disagreements, and, on the contrary, plaintiff testified he got along well with defendant and his wife. Defendant heard plaintiff had expressed an intention to a neighbor that he was going "to farm the place" for himself during the year 1917, and this report led to a conversation, begun by defendant, with the remark that he understood plaintiff was going to farm for himself that year. In the course of the conversation defendant said he had not made any money and had to have some to buy groceries; that he had heard big wages could be obtained in Nebraska, asking plaintiff what he thought of defendant's going there for the summer and working to get a little money to buy cattle with and thereby make a better living. Plaintiff expressed himself to the effect that this would be a good course to take, saying if defendant could get a place to work for a man who liked him and whom he liked, he had better stay there, as there was nothing for him on the farm. Shortly afterwards, on February 17, 1917, defendant and his wife went to Nebraska, first paying a short visit to her father. The present suit was filed on February 26, 1917, or nine days after defendant had left, and on constructive instead of personal service.

The essential averments of the first paragraph of the petition are, that plaintiff placed great trust and confidence in defendant; plaintiff had no one to look after him and care for him; "that during the month of December, 1915, the defendant, with a fraudulent view and intention of getting plaintiff to execute a deed to defendant, conveying to him the premises in controver-

sy, agreed with plaintiff that, if plaintiff would deed
and convey to him, the defendant, the premises above
described, he, the defendant, would remain and live
with plaintiff and nurse and take care of him, and look
after him, and would cultivate the premises above de-
scribed. That the defendant procured other parties to
talk to plaintiff and to try to induce plaintiff to convey
said premises to the defendant upon said representa-
tions, the plaintiff to retain a life estate therein. That
the defendant agreed that, if plaintiff would so convey
to him the remainder in fee in said premises after the
life estate of the plaintiff, he would not have said deed
recorded until after the death of plaintiff, and that he
would faithfully look after said premises and would turn
over the proceeds to plaintiff during his life, and that he
would also faithfully care for, nurse and look after
plaintiff in his old age and make him as comfortable as
possible.'' It is further averred that plaintiff, in re-
liance on these promises and representations, executed
the deed in question; that defendant never performed
any of the agreements on his part; has not looked after
the premises, and has failed and refused to care for,
look after or nurse plaintiff.

The gist of the second count is the same, but, as
stated, the prayer in that count is for damages to the
amount of $1250 ''by reason of the failure of defendant
to perform the conditions of the agreement on his part,''
and to have a judgment for that amount declared a lien
on the premises in dispute.

Adverting to the averment of an agreement by de-
fendant to remain with plaintiff and take care of him, cul-
tivate the premises, etc., we remark that not a word of
evidence is contained in the record to prove defendant,
in person, ever agreed, as alleged; plaintiff himself
testifying he never spoke to defendant on the subject of
making a will or deed in defendant's favor, nor did de-
fendant ever speak to him on the subject. This aver-
ment of the agreement is supported by no evidence, ex-
cept some tending to prove Turley had broached the
matter to plaintiff at the instigation or with the con-

nivance of defendant. Plaintiff testified: "I guess I was influenced to make this deed; Mr. Sol Turley talked to be about making it. . . . I made the deed because I thought he would do what Turley said he would do—stay there and take care of me as long as I lived. If I had not understood that I would not have made Sherman the deed." He further testified Turley spoke to him three times on this subject; the first time was in a field on the farm, where Turley said, according to plaintiff's testimony: "Sherman says he cannot do any permanent improvements on the forty if he cannot get something permanent he can hold after you are dead and gone. I did not agree to make the deed then. In about a week Mr. Turley came back to see me and said that Sherman would take the forty acres of land and keep it up and take care of me as long as I lived, if I would make him a deed to it." He further said no one except Turley talked to him on the subject; also, that he never had any conversation with defendant about taking care of him. Turley, who was a disinterested witness, positively denied the alleged conversations in the form plaintiff related them, the effect of Turley's testimony being that plaintiff declared he wanted to give the property to defendant and asked information about whether a deed would be more effective for that purpose than a will. Turley also denied, as did defendant, any conversations between the two about the deed or will, or that Turley should speak to plaintiff in defendant's behalf.

Such, in substance, is the evidence in the case, there being bits of testimony corroborative of plaintiff that Turley promised for defendant the latter would take care of plaintiff as long as he lived, if the deed was made. But the heavy weight of the evidence goes to prove plaintiff made the deed of his own volition and without any agreement on the part of defendant, either directly or through Turley, and pursuant to a long-cherished purpose to arrange in some manner, either by deed or will, so defendant would own the farm after plaintiff's death. There was much testimony, too, that plaintiff, although

seventy-three years old at the time the deed was executed, was in full possession of his faculties; a man of decided character and difficult to influence.

Before instituting the action, plaintiff asked defendant, by letter, to reconvey the land, agreeing, if this was done, defendant should share equally in plaintiff's estate with his children.

An appeal was taken from a judgment denying relief to plaintiff.

The facts in this case dispense with the necessity of discussing legal propositions; for by no pertinent doctrine or rule of equity is the plaintiff entitled to have the deed set aside or a lien declared on the land, notwithstanding the disposition of the courts to relieve disappointed grantors in a case like the present. No other judgment was possible than the one rendered by the court, without disregarding the weight of the testimony, which shows, in our opinion, the conveyance was a purely voluntary act on the part of plaintiff, neither induced by any undue influence practiced by defendant, or any promise of his made in person or through Turley. The question occurs to one, whether in the absence of fraud on the part of defendant, his supposed agreement could be made the basis of a suit for relief, in view of the fact that he is under age; but we pass over this point, because we find no agreement was made by him. Besides, there is no proof that defendant has refused to live on the farm or take care of plaintiff, if in fact, he agreed to do so. He went to Nebraska with plaintiff's consent, pursuant to his advice that defendant could do better there, and, for aught that appears, with no ill feeling on either side. No protest was made by plaintiff or demand that defendant should remain and perform his alleged agreement; but, instead, nine days after he left, the present suit was commenced; doubtless, because plaintiff regretted having conveyed the land. A case identical in all respects, including the minority of the grantee, the supposed promise to care for the grantor during life, the conveyance of an estate in remainder to the grantee in consider-

ation of the promise, and the grantee's subsequent departure from the land with the consent of the grantor to try his fortunes in a western state, is Williams v. Langwill, 241 Ill. 441.

The judgment is affirmed. All concur.