NILS PETER MENTZER v. ALBERT MENTZER and LOONETTA MENTZER, Plaintiffs in Error.—30 S. W. (2d) 146.

Division One, July 9, 1930.

942

*Wilbur F. Hall, Charles P. Dallam* and *Bruce Barnett* for plaintiffs in error.

*C. H. Rucker, J. Harold Olson* and *Frank H. Backstrom* for defendant in error.

944

ATWOOD, P. J.—This is a suit in equity to set aside a general warranty deed wherein defendant in error, Nils Peter Mentzer, is named as grantor, and plaintiffs in error, Albert Mentzer and Loonetta Mentzer, who are husband and wife and the son and daughter-in-law, respectively, of grantor, are named as grantees. The deed bears date of December 24, 1923, recites a consideration of "one dollar and other valuable consideration," and purports to convey certain lots in Kansas City, Missouri. Nils Peter Mentzer was plaintiff below and his petition, after alleging his ownership of said lots on the —— day of ————, 1923, of the value of not less than $10,000, further alleged:

". . . that said land is subject to a deed of trust securing a note for $1500; that upon said premises is one five-room residence and one two-room residence; that the son and his wife has occupied the five-room residence and this plaintiff the two-room residence for some time and now reside there; that the defendants, desirous of obtaining possession of said property, fraudulently and wickedly devised a scheme by which they might obtain possession thereof and acquire the title thereto without paying to the plaintiff the value thereof; that the plaintiff was willing and desirous to convey said property to these defendants, retaining for himself a life estate therein; that said son and his wife prevailed upon this

plaintiff not to retain a life estate in said property, but fraudulently induced this plaintiff to execute a deed to these defendants without any reservations, promising and agreeing that they preferred to execute a note to be secured by a deed of trust equal to the value of the equity in said place, and that they did agree with this plaintiff and have continuously promised to execute said deed of trust and note; that said deed of trust and note should be given in lieu of surety or bond to the plaintiff that they would furnish him all the necessities of life; that they would care for him, pay any and all bills for necessities, medical attention and medicine, and that if said defendants should fail and refuse at any time to provide all of said necessities as the same might be demanded and needed, that said mortgage or deed of trust could be foreclosed and the property sold to satisfy the indebtedness; that they now threaten to throw this plaintiff out of the premises, and have ordered him to leave the premises and refuse to care for this plaintiff and provide for him the necessities of life; that they have positively refused in any manner to carry out the terms of their contract, and that there was no consideration paid for the execution and delivery of said deed, and that the said deed was obtained by misrepresentations and with the avowed purpose of obtaining the property without any obligations and without any considerations being paid therefor; that this deed so executed by this plaintiff has been recorded in said County in Book 2457, page 207.''

Defendants' answer was a general denial. Judgment was for plaintiff setting aside the deed and holding title to said property well vested in him. The case is before us on writ of error sued out by defendants as plaintiffs in error.

The first point urged in brief of plaintiffs in error is stated thus: ''The evidence shows, either that the deed was a voluntary gift as defendants testified, or that it was in consideration of a promise to support plaintiff, as plaintiff alleges and testified.''

Plaintiff testified that he was 76 years old; that he owned the real estate here in question; that in the year 1922 he had a conversation with his son, defendant Albert Mentzer, in which he told him he was often sick, growing weaker all the time, felt like he had no real home, wanted to sell the property but might not get the full value of it, and suggested that he come out and live there and help him out ''in that kind of a way;'' that it was then agreed that the son should take over the property, plaintiff to retain a life estate therein and have his full support and anything that he needed as long as he lived; that in pursuance of this agreement plaintiff executed and delivered to his son a general warranty deed dated November 21, 1922, conveying said real estate to defendants except that life estate therein was retained by grantor. Plaintiff further tes-

tified that his son kept this deed for about a year but did not record it and finally said that he could not sell the property in that condition and wanted "a clear deed;" that he told his son he could not give a clear deed unless he "performed the contract," and his son thereupon agreed to give him a note for $7,000, secured by deed of trust on the real estate to insure his support for life; that plaintiff then got the first deed from his son and had a new warranty deed prepared just like the first one except that it was dated December 24, 1923, and contained no reservations; that he duly executed this deed, took it home, showed it to his son, told him he would deliver it to him whenever he executed and delivered to him the note and deed of trust previously agreed upon, and thereupon placed the deed in his own bureau drawer; that a few days later he again asked his son for the note and deed of trust and when he failed to produce them he looked in his bureau drawer for the warranty deed, but it had disappeared; that he later learned that his son had recorded this deed; that subsequently on several occasions he requested his son to let him have the note and deed of trust, but he declined to do so, and later on treated him harshly and tried to drive him away from the property; that plaintiff never delivered this second deed to defendants, or consented to its delivery, and that he received no consideration whatever therefor.

Defendant Albert Mentzer testified that early in the year 1922 plaintiff told him that he was going to give him this property; that at plaintiff's request he advanced money to defray expenses connected with this real estate and plaintiff delivered to him the warranty deed first above mentioned in which grantor reserved a life estate; that he continued to advance money on the property and about a year later his father gave him the second deed above mentioned, stating that he had been sued and didn't want to have anything more to do with the property; that they all lived on the property, plaintiff being fed and cared for by defendants, until a misunderstanding arose along in 1924, after which plaintiff refused further attention, though he was given money from time to time. This defendant's wife testified to like effect, both witnesses indicating that they thought plaintiff executed this second deed because he had been sued, or as the wife agreed on cross-examination, "merely to protect him during the lawsuit."

According to defendants' own evidence it can hardly be said that they were to have the whole property as an unrestricted gift. Grantor's reservation of a life estate in the first deed bespeaks the contrary, and if, as defendants intimate, plaintiff made the second deed because he had been sued and "merely to protect him during the lawsuit" its delivery under the circumstances in evidence would not have constituted a "voluntary gift" of the land to them. Plaintiff stoutly denied that he intended or agreed to give defendants

the property without reserving to himself a life estate therein, as he did by the express terms of his first deed, or without receiving a note in a substantial amount secured by deed of trust on the property to secure his lifetime support, which he says was the agreement made before he executed the second deed. His contention that this second agreement was made in bad faith and the second deed thereby fraudulently obtained is clearly made, and it is far more believable than the alternative that he voluntarily gave defendants this second deed without any precaution or agreement whatever insuring his support. If the only matter that disturbed him was the fact that he had recently been sued he probably would have followed his then counsel's advice to attempt no conveyance of the property on that account. Counsel for plaintiffs in error attempt to make much of the fact that he said nothing to his attorneys at this time about the agreement he had with his son and did not have them prepare the note and deed of trust, but we think his explanation that he did not do·so because his son was not then with him is reasonable and satisfactory.

The record does disclose that the trial court was of the opinion that the second deed was executed "to avoid a possible outcome of some litigation." This is suggested by defendants' testimony and particularly by that of plaintiff's former counsel who, testifying for defendants, said at the time the second deed was made plaintiff seemed much disturbed over the suit and indicated a desire to convey his property on that account, but he advised him not to do so. Even on this theory the judgment might be sustained because it is in the nature of an evidentiary enlargement of the specifications of fraud arising from facts conceded and still asserted by defendants and they are in no position to complain. [Elliott v. Railway Co., 157 Mo. App. 517, 523, 138 S. W. 663.] It appears in evidence that this suit was instituted against plaintiff in the name of a "straw man" the charge being that he had slandered the alleged owner's title to real estate. It seems that Nils Mentzer had filed a mechanic's lien against the land to recover wages, which lien was afterward cut out by foreclosure proceedings. It does not appear that Mentzer knew of this, but the petition alleged that when a prospective buyer came to see Mentzer about it he told him the title was not good, that he had a mechanic's lien against the property. Mentzer's counsel "didn't think there was much in the case," and they were evidently right in their estimate, although final disposition of the case is not shown by the record. Even though moved to execute this second deed by the anxiety and agitation that an old man would naturally experience under such circumstances it does not appear from the record that the conveyance ever caused injury or inconvenience to anyone except himself. Counsel for plaintiffs in error do not in-

voke the maxim of "he who comes into equity must come with clean hands" against him. For us to do so under the circumstances in evidence would be to allow the maxim to work injustice and wrong, and this will not be done. [21 C. J. 187, sec. 172.] However, as already stated, we think the judgment is amply supported by evidence well within the pleadings. The contention of plaintiffs in error that the second deed "contains no provision making the performance of such promise a condition subsequent upon the title or estate conveyed" entirely overlooks the evidence of such a promise and the circumstances under which the deed was obtained. Upon these matters and not upon the letter of the deed plaintiff rested his case. Hence, the authorities cited on this point are without application.

In their second point defendants in error contend that at the close of the evidence plaintiff abandoned the theory of his petition and elected to stand upon the single proposition that the deed was without consideration; that want of consideration constitutes no ground for setting aside the deed; and that plaintiff's action was tantamount to a withdrawal of all allegations and evidence relative to a promise to support plaintiff. As above stated the record shows that at the close of all the evidence the trial judge indicated an impression that plaintiff had deeded the property "to avoid a possible outcome of some litigation." Thereupon counsel for plaintiff offered to amend the petition by striking out the charge of fraud and stand upon the pleading so that the charge would read:

"That said deed was delivered to these defendants without any consideration; that they have held the property since the delivery of said deed; that they have since refused to recognize any right, title or interest in the plaintiff in said property, and refused to reconvey said property to said plaintiff."

Counsel for defendants then inquired: "Is this amendment to go?" The court said: "Look it over." Section 1289, Revised Statutes 1919, reads: "No process, pleading or record shall be amended or impaired by the clerk or other officer of the court, or by any person, without the order of such court, or of some court of competent authority." No such order appears in the record before us. On the contrary, it reads thus: "And thereupon this cause was submitted to the court under the pleadings and the evidence, and the same was by the court taken under advisement." We must treat the proffered amendment as not allowed and plaintiff's allegations as not abandoned. Plaintiffs in error misconceive the case when they assume that the judgment must rest solely on the ground of want of consideration for the deed. There was ample evidence from which the court could, and as above indicated did,

conclude that the grantor never intended by this conveyance to give the property described in the deed to the grantees named therein, and hence, no title passed. Their refusal to return the property to plaintiff on his demand under the circumstances in evidence warranted equitable intervention. [Wilkerson v. Wann, 16 S. W. (2d) 72, 76; Clarkson v. Greely, 40 Mo. 114.]

Nor did the court fail to take into consideration payments that defendants testified they had made, for the record shows a finding as follows which is well supported by the evidence:

"From the itemized receipts and payments produced on the property by the plaintiff and the defendant, and the payments for repairs and taxes and necessary expenditures on the property, and interest paid on the first loan, considering both what the plaintiff has paid and also the defendant and counting a reasonable rent for the use of the property which defendant has occupied since September, 1922, the reasonable rent is $25 per month, the expenditures by defendant are more than offset by a deduction for the occupancy and use of the property and the two amounts, both what is owing defendant and returned to the plaintiff for use of the property, are so near equal that the court finds no indebtedness either way, and the motion for a new trial is overruled and excepted to."

Counsel for plaintiffs in error also say that the deed was executed to a husband and wife, and that the estate of the wife should not be disturbed because there is no evidence of any breach of agreement on her part. There is substantial evidence that she knew that when plaintiff executed this deed he did not intend thereby to make an absolute gift of the property to her and her husband. This contention is also ruled against plaintiffs in error.

Finding no reversible error in the trial of the cause the judgment is affirmed. All concur.