PAUL F. MEYER, VERA L. MEYER, RALPH MEYER, LULU E. LOIDA, MINNIE L. GRUEL, ALVINA L. BERKEL and HERMAN MEYER, (Plaintiffs) Respondents, v. MICHAEL H. SCHAUB and PAULINE SCHAUB, (Defendants) Appellants, No. 43926—266 S. W. (2d) 620.

Division Two, April 12, 1954.

---

*Henry C. Stoll* and *Sidney A. James* for appellants.

714·

*Suelthaus & Krueger, Albert D. Krueger* and *G. L. Seegers* for respondents.

716

BARRETT, C.—This is a suit to set aside a quitclaim deed and to recover the sum of $1500 as damages to the plaintiffs' inheritance. In their petition the plaintiffs alleged as grounds for setting aside the deed that the aged grantor had been ill for some time, that her mind had become weakened and impaired, and that the defendants, "for the purpose of defrauding the plaintiffs," persuaded, induced and unduly influenced the grantor to make the conveyance. It was alleged that there was no consideration for the deed, and that the grantor was of "unsound mind within the meaning of the law" and therefore lacked the requisite capacity to execute a valid deed. The defendants' answer, except for admitting the conveyance, was in effect a general denial of the charges set forth in the petition. The trial court found for the plaintiffs; specifically, the trial court found, by reason of her age, illness and weakened mind, that the defendants "did persuade, unduly influence and induce" the grantor to make the conveyance, that she was of unsound mind, and that there was no consideration for the deed. In addition, since the grantees, after the conveyance, had mortgaged the property to secure notes in the sum of $1500, the trial court entered judgment against the defendants for the amount of the notes. Accordingly, for all these reasons, the trial court cancelled the deed and decreed the title to the property to be vested in the grantor at the time of her death. The defendant-grantees appeal from the judgment and decree and insist that the trial court was in error in its finding and decree in all these particulars, and that the judgment should be reversed and they decreed the fee simple owners of the property.

At the outset, the parties are in disagreement as to the scope of this court's review of the appeal, the plaintiffs urging, among other things, that this court will refuse to reverse a judgment in a suit of this type on the ground that the facts are against the weight of the evidence. It is not necessary to set forth in detail the arguments of the parties, or to state all the rules and their limitations, it is sufficient to note that in a suit to cancel a deed "Every case of this kind must be decided upon its own facts" (Ulrich v. Zimmerman, 349 Mo. 772, 785, 163 S. W. (2) 567, 574), and it is the duty of the appellate court to review the case anew upon its merits and if possible apply and enforce the appropriate equitable principles. Binnion v. Clark, 359 Mo. 202, 206, 221 S. W. (2) 214, 216. In so doing the case is "heard de novo on the record as made below, the

717

reviewing court determining the weight and value of the evidence, but usually deferring to the findings of the chancellor, especially where there is conflicting oral testimony involving credibility of witnesses, except when convinced that such findings are against the weight of the evidence.'' Been v. Jolly, (Mo.) 247 S. W. (2) 840, 853. In connection with these rules, evidence which has been rejected by the trial court, if admissible and preserved in the record, will be considered. V.A.M.S., Sec. 510.310(4).

■ This litigation arose out of these facts and circumstances: The subject matter of this litigation is the property known as 4338 North Eleventh Street, in St. Louis, consisting of a lot and a small two-story house. Originally there was a one-story frame house on the back of the lot but about fifty years ago the house was moved to the front of the lot and a second story added. The deceased grantor, Mrs. Alvina Meyer, inherited the property from her father many years ago. According to a former sister-in-law, Alvina and Henry Meyer were married in 1898 and, in a few years, remodeled the house. Henry had been previously married and had a son, Fred, then about one and one half years old. In 1904 Henry left Alvina and his son and was not seen or heard of again until he reappeared in St. Louis thirty-nine years later. In the intervening years Alvina and her stepson lived in the property at 4338 North Eleventh Street. In 1943 Henry returned to St. Louis and resumed living with Alvina and his unmarried son, apparently, as if nothing had happened. In 1944 Alvina fell and broke her hip and thereafter was a semi-invalid, spending most of her time in a wheelchair. On July 19, 1951 Henry died and six days later Fred died. By that time Mrs. Meyer was eighty-five years of age, suffering from arteriosclerosis and cancer of the breast, and was critically ill. She had diarrhea and was emaciated, and, as a doctor said ''appeared every bit of the age of eighty-five to ninety.''

On the 14th day of August, less than a month after the deaths of Henry and Fred, Mrs. Meyer deeded her property to her next door neighbors, Pauline and Michael Schaub. The instrument of conveyance was a quitclaim deed and recited a consideration of one dollar and reserved to the grantor ''a life estate in the above described property for and during her natural life with power to use, occupy and enjoy the same and to collect the rents and income thereof for her sole and exclusive use and with power to rent or lease the same or any part thereof at her sole discretion for and during her natural life.'' On October 22nd, 1951, the Schaubs borrowed $1500 and executed a deed of trust on the property to secure the loan. Mrs. Meyer died on October 18th, 1951, and, for the purposes of this action left ''no living kindred * * * capable of inheriting from her.'' The plaintiffs are her collateral relatives, her husband's kindred, a brother, who lives in Chicago, and nephews and nieces who live in St. Louis.

In the conclusion we have reached, in trying the cause anew, it is not necessary to review in detail the issues of undue influence and Mrs. Meyer's mental capacity and emphasize either of them as the decisive or determinative factor. They are briefly considered only in so far as they concern and bear upon the issue of lack of consideration and its related factors as a basis for cancelling and setting aside this conveyance.

Upon all the issues the only impartial witness, the single witness wholly without self-interest ▉▉▉ or motive, was Mrs. Meyer's substitute physician, who saw her five times between the dates of August 2nd and October 18th, 1951. When asked upon direct examination whether, in his opinion, Mrs. Meyer was of unsound mind the doctor said, "I wouldn't term it 'unsound mind,' no. * * * This woman certainly was capable of saying yes or no, as to something if it would hurt her or anything connected with bodily discomfort; but, my opinion is that, as far as any decision regarding thought, she was not in the physical and mental condition to carry on any weighty decisions at all." It was his general opinion that she was not in a position to decide and pass upon selling or conveying her property. He did not make a neuropsychiatric examination, but he said, "She had arteriosclerosis, which could have affected her mentality. * * * She was mentally normal from the standpoint of the layman, in that she answered questions, that I mentioned before, which did not require any more than saying yes or no. I never made an examination to go any further." His conclusion is summed up in an answer to a question by the trial judge, "Q. Doctor, I believe you testified, in your opinion this woman was not of unsound mind, and yet you drew a line somewhere that if she got beyond that she was not reliable? A. Yes. I felt that her answers were lethargic in many ways and slow. She could answer yes or no as to pain and show where it was; but, I felt in any person of her condition you would not be capable of following a true train of thought as to some weighty problem or doing something that was, that required much more than stating the comfort of the body or something in that manner. That is what I am trying to get across."

Other of the plaintiffs' lay witnesses testified or attempted to leave the impression that Mrs. Meyer was of unsound mind, but invariably, in that connection, they testified to some other fact in which they were interested that required considerable intelligence and mental capacity. For example, the undertaker was of the opinion that she lacked the capacity to make a deed, and yet it was his idea that Mrs. Meyer should enter a home for the aged conducted by his church. Accordingly, he caused his personal attorney to call on her for the purpose of executing a will in which she would leave her property to the church. The lawyer called with the undertaker, Mrs. Schaub was there and two of the plaintiff nieces. The lawyer excluded

all these parties from the house and talked to Mrs. Meyer for some time, but she did not execute a will and the lawyer did not testify. The former sister-in-law, who did not see Mrs. Meyer after 1943 until Henry's death in 1951, left the impression that Mrs. Meyer was of unsound mind, but this witness, on August 30th, suggested to Mrs. Meyer that she come to her home in Illinois and stay a few weeks, that she would take care of her. She saw her again on September 23rd and, on that occasion, she testified that Mrs. Meyer said, " 'I want to sign this property over to you and Frank. You are the only true friends that I ever had.' " The defendants' witnesses testified that Mrs. Meyer was of unsound mind but they were all interested, directly or indirectly, in upholding the conveyance. But, even if Mrs. Meyer was mentally capable of executing the deed, the conclusion is inescapable that she was critically ill, and that by reason of age and serious, prolonged illness her mental faculties were impaired.

By reason of the recent death of her husband and stepson, her serious and prolonged illness, and her advanced age, Mrs. Meyer was distraught and bewildered. It is indeed understandable that she repeatedly said, "What is to become of me?" It is obvious from the record, despite her plight, that she really desired, in any event, to remain in the home she had occupied for more than fifty years, if possible. And yet everyone with whom she came in contact had a different idea of how she should or could be taken care of and how she should dispose of her property. After a search of her bureau and her bed, $535 in cash was found, and, except for her furniture and a very small account in a bank, that was all the money or property she had. And she gave the cash to the undertaker saying, "Do with it as you ▉ wish." He entered the sum on his books to her credit and expended it in payment of her funeral expenses. All that is known concerning the execution of the deed to the Schaubs is that Mrs. Schaub called a real estate man and informed him that Mrs. Meyer "wanted to make a deed" to the property. He called at the residence and talked to Mrs. Meyer, in Mrs. Schaub's presence, and says that he got a description of the property, suggested the reservation of a life estate, and returned to his office where he drew the deed. A few days later he returned with the deed, Mrs. Meyer signed it, shakily with his pen, and he took her acknowledgment. He says that Mrs. Meyer paid him $7.75 or $8.00 for drawing the deed and as his notary fee. The deed is dated August 14th, 1951, Mrs. Meyer died on the 18th of October, and on October 22nd the Schaubs borrowed the $1500 from the real estate man's firm, for which he received a commission of $32, and listed the property for sale. Mrs. Schaub offered to testify that the $1500 loan was "used specifically and primarily" in payment of plumbing bills, installation of a bathroom upstairs, a hot water heater, decorators and "other work and material expended in the renovation, repair and reconditioning and improve-

ment of the property." As indicated, it is not necessary to further detail the circumstances concerning undue influence, nor to determine whether there was undue influence.

The deed involved here recites a consideration of one dollar, there is no recital of "other valuable consideration" or of "love and affection," and there is no evidence concerning the relationship of the grantor, Mrs. Meyer, and the grantees, the Schaubs, prior to July 28th, 1951, other than the fact that they were next door neighbors. Mrs. Schaub was thirty-eight years old and Mrs. Meyer was eighty-five. The conveyance was to "Michael H. Schaub and Pauline M. Schaub, his wife," and Michael is a defendant in this case, but he and Pauline were divorced sometime prior to the trial, and he did not appear or testify. His brother who did testify was introduced to Mrs. Meyer the first time he was in the house, probably in the latter part of July. So in this case, there was no close, personal relationship of long standing with the consequent presence of a "conscious obligation" on the part of the grantor. Wallace v. Brown, (Mo.) 165 S. W. (2) 408, 411. In this respect the case is not comparable to the instances of conveyances to those who in fact stand in the relationship of a foster child, or to one who was reared in the grantor's home, or even to those who were close personal friends and business advisors. Clark v. Skinner, 334 Mo. 1190, 70 S. W. (2) 1094; Rich v. Baer, 361 Mo. 1048, 238 S. W. (2) 408; Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2) 59; Hardaway v. Hardaway, 281 Mo. 403, 219 S. W. 360. Consideration is not essential to the validity of a deed (4 Tiffany, Real Property, Sec. 984, p. 67), "The owner of land may give it away to a stranger, as well as sell it to him, and consummate the gift or sale by deed." Clark v. Skinner, 334 Mo., l.c. 1196, 70 S. W. (2), l.c. 1097; Masterson v. Sheahan, (Mo.) 186 S. W. 524. But here there was neither pleading, claim, nor proof of a gift, and the reservation repels the inference of an immediate outright gift. Mentzer v. Mentzer, 325 Mo. 941, 30 S. W. (2) 146; Binnion v. Clark, 359 Mo. 202, 221 S. W. (2) 214; Horn v. Owens, (Mo.) 171 S. W. (2) 585.

Likewise, in cases of this type, mere inadequacy of consideration, in the absence of other compelling factors, is not in and of itself sufficient ground for setting aside a voluntary deed (9 Am. Jur., Secs. 24, 25, 26, pp. 370-372; Wells v. Kuhn, (Mo.) 221 S. W. 19) but the fact of inadequacy, or of no consideration, is a factor to be considered in connection with the presence of other inequitable incidents. Frey v. Onstott, 357 Mo. 721, 210 S. W. (2) 87; annotation 13 L. Ed. 952; L. R. A. 1916D, p. 382. In this case there was no pleading of a contract to care for and support the grantor as consideration for the deed, the defendants seek to have the inference drawn from the facts and circumstances (Masterson v. Sheahan, (Mo.) 186 S. W., l.c. 526), and, it may be assumed for the purposes of this opinion, if the inference is a fair and reasonable one

upon the whole record, that they have established consideration for the conveyance. Reaves v. Pierce, (Mo.) 26 S. W. (2) 611; Schneider v. Johnson, 357 Mo. 245, 207 S. W. (2) 461. All we know from this record concerning the relationship between the grantor and the grantees is that after Fred's death on the 26th day of July Mrs Schaub started bringing food to Mrs. Meyer and attending to her personal needs. She changed the dressings on her breast, bathed her, waited on her and performed the services of a practical nurse and, as the doctor said, ''I believe she did a conscientious job of home nursing.'' The house was infested with bugs and after a few days Mr. Schaub and his brother removed the linoleum from the kitchen floor, removed the kitchen plumbing and cleaned and painted the kitchen. The Schaubs moved some of their kitchen equipment into Mrs. Meyer's house and they cooked and ate their meals there. They also moved some of Mrs. Meyer's furniture, said to be antiques, into their home. These services were all performed prior to and after the conveyance on the 14th day of August, and it is not claimed that the services prior to August 14th were in contemplation of or in consideration of the conveyance, or that Mrs. Meyer promised to pay for them. The Schaubs claim to have paid the grocery bills, some items for drugs, and they did pay the doctor's bill of $51.00, but it is not claimed that these expenditures constituted the consideration for the deed. And, '' 'As a general proposition, no man can make himself the creditor of another by any act of his own unsolicited and purely officious. There must be a previous authorization either express or implied, or an assent or sanction given after the money is paid or the act done. If a plaintiff volunteers a payment on account of a defendant without any authority or request express or implied, the defendant is not obliged to reimburse him. * * * And where a party voluntarily does an act, or renders service, and there was no intention at the time that he should charge therefor, or understanding that the other should pay, he will not be permitted to recover, for that which was originally intended as a gratuity cannot be subsequently changed into a charge.' '' Cook v. Branine, 341 Mo. 273, 280, 107 S. W. (2) 28, 32.

While Mrs. Schaub performed certain services and seeks to draw the inference of consideration from them, when it came to her offer of proof she did not claim either an express or an implied promise upon the part of Mrs. Meyer to compensate her for the services, or an agreement or understanding of any kind with Mrs. Meyer that she would convey her property in consideration of future care and support. She claims, in her offer of proof, that on the day of Fred's funeral, July 28th, seventeen days prior to the conveyance, that the plaintiff nephews and nieces, Mrs. Gruel, Mrs. Berkel, Paul and Vera Meyer, came to her home ''and in the presence of each other'' the following conversation took place: ''Mrs. Gruel addressed Mrs. Schaub and said, 'Grandma tells us that you had promised Fred that you

would take care of Grandma.' Mrs. Schaub replied, 'Yes,' that she had so promised. And then Mrs. Loida spoke to Mrs. Schaub and said, 'Honey, we live so far and it is so hard for us to get here, it is impossible for us to take care of her.' And Mrs. Vera Meyer—oh, yes, Mrs. Schaub's reply to that was, 'Well, yes, I can understand that it would be difficult for you.' And then Mrs. Vera Meyer, also addressing Mrs. Schaub, in the presence of these people said, 'I work every day. I couldn't do it.' Mrs. Schaub said to her, 'That is all right. I will sure take care of Grandma; I will be glad to.' Mr. John Loida, that is the husband of one of the plaintiffs here, addressed Mrs. Schaub and said, 'Will you take care of her?' And she said, 'Sure, I will take care of Grandma.' And then Paul Meyer, also addressing Mrs. Schaub at that time said, 'Well, we would sure appreciate it if you would.' '' Whatever inferences may be drawn from this conversation, it certainly does not prove a promise of any kind for any purpose, either express or implied, on the part of Mrs. Meyer who was not even said to be present. If there was such a promise or understanding, or if it was the intention of the parties, including Mrs. Meyer, to enter into such an arrangement in consideration of a conveyance, it can only be said that the entire matter was badly handled.

Considering the lack of proof of consideration for the conveyance, the factors of Mrs. Meyer's critical illness and physical condition, her distraught and impaired mental state, the disparity in age and circumstance, the circumstances in which the deed was executed and Mrs. Schaub's subsequent handling of the property, and all the circumstances, it can only be said, upon this trial anew, that this court may not with confident assurance come to another and different conclusion from that of the trial court, or, in view of the presence of all the equitable incidents and factors, that the trial court erred in setting aside and cancelling the deed. Derby v. Donahoe, 208 Mo. 684, 106 S. W. 632; Cook v. Branine, supra; Hughes v. Renshaw, 314 Mo. 95, 282 S. W. 1014; Vining v. Ramage, 319 Mo. 65, 3 S. W. (2) 712; Kadlowski v. Schwan, 329 Mo. 446, 44 S. W. (2) 639; Colquitt v. Lowe, (Mo.) 184 S. W. (2) 420; Frey v. Onstott, supra.

 The defendants' evidence and offer of proof that the $1500 loan was spent upon the property is uncontradicted, and the inference is that the repairs were necessary and enhanced the value of the property rather than that they diminished its value, or the plaintiffs' inheritance. The validity of the encumbrance against the property is not questioned in this proceeding, nevertheless, so far as appears, the Schaubs are personally obligated on the notes. While the principal transaction has been set aside, there is no evidence, except for the deed of trust itself, that the plaintiffs have been damaged, and the same equitable incidents concerning the note and mortgage are not apparent with the same compelling force, and the manifest justness

of a personal judgment against the grantees for the sum of $1500 is not made to appear. 12 C. J. S., Sec. 83, p. 1098, Sec. 86, p. 1104; Graham v. Fisher, 278 N. Y. S. 982, 273 N. Y. 652, 8 N. E. (2) 331; Groff v. Longsdon, (Mo:) 239 S. W. 1087; Kisling v. Yoder, (Mo.) 236 S. W. 860; Mentzer v. Mentzer, supra.

Accordingly, the personal judgment against the appellants for $1500 is reversed, otherwise the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM: The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.