Karl J. **WINDHORST**, Respondent,

v.

Golden **LAMBERT** and Hester **Lambert**, Appellants.

No. 52626.

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

Marvin L. Dinger, Ironton, for plaintiff-respondent.

Robert A. McIlrath, Flat River, for appellants.

BARRETT, Commissioner.

Upon the petition of the grantor the court has set aside a warranty deed and the grantees, husband and wife, have appealed. The essence of the appellants' claim is that the court erred in finding that the transfer was not intended as an outright gift, that in fact the respondent was "an invidious Indian-giver, whose third-hand marital misgivings apparently initiated a desire to negate a gift, once freely given." Assignments of error relating to the introduction of certain evidence and depositions or the rejection of certain evidence are now beside the point—in this court the cause is reviewed anew, (Civil Rule 73.01(d) V.A. M.R.) evidence improperly excluded and preserved will be considered and evidence improperly received will be rejected and finally, if respondent grantor made a case "the findings of the trial court, based on the credibility of the witnesses who testified before him, rejecting defendant's explanation, must be given great weight and should not be set aside unless the proof adduced is palpably insufficient to sustain them or unless the evidence is overwhelmingly against them." Basman v. Frank, Mo., 250 S.W.2d 989, 992; Butcher v. McClintock, Mo., 373 S.W.2d 917, 922. Among other matters the court "finds the issues generally for plaintiff," that "plaintiff never intended that the property in question as an outright gift to defendants" and that "the deed was given to defendants by plaintiff in return for a home for the rest of his life and for his burial; after which one-half the property was to go to sisters of plaintiff," and finally the court found that after a short time "defendants refused to acknowledge and recognize the agreement and made claim that the deed was an outright gift to defendants from plaintiff."

The respondent, Karl J. Windhorst, age 60, for many years was a "maintenance man" at Iron Mountain, a division of M. A. Hanna Company. In 1958 Karl and his wife purchased a house in Graniteville, five or six miles from Ironton, for $8850.00. They put in a storm cellar, aluminum doors and windows, an enclosed porch, two sheds and a heating system and by 1960 Karl valued the property at $18,000.00, others valued it at $15,000.00. On April 11, 1964, after a prolonged cancer illness, Karl's wife of 35 years died and was buried on April 15. After his wife's death there was a marked change in Karl's working habits and his ability to get along with co-employees, he developed a number of personal problems, the personnel director said that he was *"emotionally upset" and came to the office* repeatedly with his problems. His doctor described his changed attitude and condition as "agitated" due to "a rather severe nervous reaction." Among his problems was an intense fear and dislike of his stepchildren. One witness quoted him as saying, at his wife's grave, "Mary, old girl, I buried you, now I am burying your kids with you." And a stepson did call his doctor, "questioning me rather severely whether there was a possibility of Karl poisoning his wife." The doctor said that Karl was "sane" but he was "very emotionally upset," to the extent that in his opinion he "didn't seem quite capable of handling his own affairs to me. I would be unable to state that he was not of sound mind, but he was of an agitated state and I am certain he was not really capable during that period of time immediately following his wife's death."

In any event, on the day of his wife's funeral, April 15, 1964, Karl went to the home of Golden and Hester Lambert to live, and he remained there for three months, left when he was again married and returned for another stay of two months. While Golden and Hester were younger they were friends of the Windhorsts but not related, and Karl and Golden had worked together at Iron Mountain for twelve years. There is some question if not dispute as to the precise dates, but in a few days, Hester says that on May 27th, without prior discussion, Karl came in about 9 o'clock and "just gave the deed to Golden" and, he simply said, "Here, I am giving you this property. * * All it is going to cost you is to get the deed recorded. * * * I don't want her children to have a G. D. thing that we ever had." The Lamberts both denied that there was any kind of an agreement to support, there was not even any discussion of the subject, according to them. The deed recited a consideration of $10.00 and "other good and valuable considerations" but the Lamberts did not pay the $10.00, or the fee to record the deed and they deny that there was any "other" consideration.

Karl's version was that "they agreed to look after me and bury me and see that I was clothed and fed. In other words, take care of me, you know, that nothing would happen to me. * * * They said they would take care of me as long as I lived and see that nothing would happen to me and I would be buried and that." At another point in the trial he said, "they asked me to come out there and they would take care of me, that I wouldn't want for nothing that I was all set and I made the will in Golden's favor, after I was dead they would see everything was cleared off and give my two sisters up in St. Louis half." Karl says that pursuant to this agreement he had a will drawn (that Golden has) and executed and delivered to the appellants a deed to his house as well as title to his cemetery lot. And he says, for about three months, "They made my meals, she washed my clothes and that, was very good friends to me." Within three months Karl made an unfortunate marriage and when that ended he returned to the Lamberts because "I didn't have no place else to go." Except for a small sum of cash, some furniture and a $450.00 equity in another house, Karl had no property other than the house involved in this litigation. Finally, Karl says "the only thing is I couldn't stay there because she was always nagging at me. * * She shook her finger in front of my nose

and said I wouldn't get one penny." And finally, he said, "She just got nasty. * * * She didn't tell me to leave but she made it so damned hot for me that I had to." In September the Lamberts declined Karl's offer to pay for any services they may have rendered but they refused to return his property and in December left their home and moved into the Windhorst house.

 In these briefly noted circumstances it is not necesssary to analyze specific testimony, draw inferences or characterize conduct. As indicated, the appellants claim a gift, they deny that there was any agreement to support and care for and in this posture Karl's version, corroborated in some respects by other witnesses, if accepted stands alone (Finley v. Williams, 325 Mo. 688, 29 S.W.2d 103) and it is not as if Karl had abandoned or prevented performance of the contract, under his version the appellants are in default denying that they ever made a contract to care for him for the remainder of his life. Admittedly, claiming a gift, there was no consideration for the conveyance, the parties were not related, there was no performance of a filial duty and Karl had no other valuable property, he was distraught or "agitated" and it is not necessary to indicate all the factors requisite to the setting aside of a deed or to point out other inequitable incidents, at best the appellants' case involves and depends on credibility and this court could not with confidence make a contrary and different finding to the supported finding the court made. The proof and the court's finding are well within the factual situations and rules of the following cases: Mentzer v. Mentzer, 325 Mo. 941, 30 S.W.2d 146; Cook v. Branine, 341 Mo. 273, 107 S.W.2d 28; Hood v. Throop, Mo., 280 S.W.2d 106; Colquitt v. Lowe, Mo., 184 S.W.2d 420; Meyer v. Schaub, 364 Mo. 711, 266 S.W.2d 620; Frey v. Onstott, 357 Mo. 721, 210 S.W.2d 87. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.