LEEDY, J., and DEW and ANDERSON, Special Judges, concur.

ELLISON, P. J., dissents.

Adopted as the opinion of the Court en banc.

All concur.

Clara HOOD, Respondent,

v.

Andrew J. THROOP and Alice Throop, Appellants.

No. 44272.

Supreme Court of Missouri.

Division No. 2.

June 13, 1955.

A. R. Dunn, Neosho, for appellants.

Burden & Shortridge, Joplin, for respondent.

**WESTHUES, Judge.**

This case comes to the writer on reassignment. It was submitted and argued at the September Session, 1954, and was assigned to a judge who has since retired.

Plaintiff filed this suit to set aside a deed whereby she had conveyed to the defendants her home place consisting of 20 acres in Jasper County, Missouri. The defendants filed an answer denying the fraud, the undue influence, and the lack of consideration as alleged in the petition and, in the alternative, asked the court, in case the deed be cancelled, that they (defendants) be allowed compensation for expenses incurred in improvements made. The case was transferred to Barton County on change of venue where the trial court set aside the deed and allowed defendants $492.01. From the judgment, the defendants appealed.

Defendants, in their brief, say that plaintiff's petition failed to state facts sufficient to sustain equitable relief; that the evidence did not show fraud or undue influence or lack of consideration and that plaintiff was guilty of laches.

The evidence justifies the following statement of facts: Plaintiff Clara Hood, aged 73 at the time of trial, lived on the 20-acre tract in question. Her husband had died more than 14 years prior thereto. She had no children. She had a nephew living in Kansas and a niece in the State of Washington. About 1947, plaintiff asked her nephew if he would look after her, take care of the place and keep it up, if she would deed him her property. The nephew replied that he was not in a position to do this. The defendants were neighbors of plaintiff and plaintiff told them about her offer to her nephew and of his refusal. A short time thereafter, the defendant Alice Throop informed plaintiff that her husband had said if any one would give him a place, he would keep it up in good condition, take care of her in every way and provide a good burial. Later, plaintiff and the defendants discussed this matter again and the defendant Andrew J. Throop took plaintiff to a lawyer, had a deed prepared conveying the 20 acres to defendants and at the same time had a will prepared whereby the defendants were made the sole beneficiaries. Plaintiff executed both instruments on that day and defendants retained the will and later the deed after it had been recorded.

Cordial relations continued for more than a year and then relations became less cordial and grew worse as time passed. Plaintiff's evidence was that defendant Andrew J. Throop failed to keep up the place. In particular, he refused to cut the lawn;

that the weeds and grass were so high that she could not see the roadway in front of her house; that the weeds were so high in the pasture that she could not see her cow; that the buildings were in poor repair; that she had plumbing in her house but that the pump was out of order; that plaintiff had no fuel. One witness, Judge Allen Patrick, a former justice of the peace, testified that plaintiff and defendant Andrew J. Throop had a conversation in his presence and he heard the following:

"Q. Did Mr. Throop and Mrs. Hood have any conversation in your presence? A. Yes, sir.

"Q. Would you relate to the court what that conversation was? A. She complained to him that he wasn't taking care of her and he wasn't furnishing her anything.

"The Court: Speak a little louder. A. She complained that he wasn't furnishing her anything and he told her he wasn't going to get her anything else only that all he was going to do was bury her; that's all he was going to do."

Plaintiff testified that she asked the defendant to cut weeds and that he told her he would not do that. Note her evidence as to what was said:

"Q. Did you ever have any conversation with Andy Throop about keeping the lawn mowed? A. Not exactly that but I had a conversation about the weeds south of the house.

"Q. What was that conversation? A. Well, he told me that John Houk had told him that he had improved the place since he got the deed and I said to him: 'Do you consider it improved when the weeds have grown so high I can't even see the tops of the cars on 20th Street when I stand at my window in the kitchen?' He said: 'I don't cut weeds and I didn't have any intention of cutting weeds.'"

Plaintiff stated that there was no electric pump so the inside toilet facilities could not be used and the toilet house outside was roofless and the structure was leaning so badly that she herself propped it up to keep it from falling. A picture of this structure was introduced in evidence. It is a sight to behold. Only a James Whitcomb Riley could adequately describe it. So, we shall say no more. It was shown and admitted by the defendants that plaintiff paid the taxes and the fire insurance premiums. There was evidence that defendants made an attempt to sell the property. There was also evidence that plaintiff trusted the defendants and that on two occasions Andrew J. Throop advised plaintiff with reference to matters pending in court. Defendant admitted that he brought about a compromise for her in a lawsuit and that he represented her before the county court. On cross-examination, defendant Andrew J. Throop testified as follows:

"Q. She reposed the utmost confidence in you did she not? A. Yes, sir.

"Q. That was before the deed was made and up until the time the deed was made? A. I reckon so, before she did and I know she did afterwards. She seemed to ask me all about what would be best to do."

The defendants introduced evidence tending to prove that they had complied with their contract. A number of witnesses testified that the place appeared to be in better condition after defendants took the deed than before. There was some evidence that plaintiff wanted the grass to grow up and go to seed. That was an explanation made for the tall grass and weeds. There was a conflict in the evidence but it is our conclusion that the trial court was justified in finding that plaintiff placed great confidence in defendants and that defendants did not perform their part of the contract.

Defendants' point that the petition and the evidence were insufficient to justify

the relief granted are without merit. These points may be treated together. The petition in a general way alleged facts which, if true, would justify a trial court's setting aside the deed. A similar situation was before this court in the case of Wagner v. Hicken, Mo., 232 S.W.2d 531. This court there sustained the trial court which had granted relief and set a deed aside for the reason that the defendants had promised to take care of the plaintiff, had received a deed, and then refused to fulfill their contract. The court held the promise was made only to get the property and defendants had no intention of performing their part of the contract. In the case of Cook v. Higgins, 290 Mo. 402, 235 S.W. 807, loc. cit. 815(10), a deed was set aside and the facts presented to the court in that case were very similar to the facts in the case under review. Defendants in this case paid no money for the deed. Plaintiff paid for the recording and the making of the deed. The only consideration was the promise to care for plaintiff during her life and to provide a burial. The trial court found that a confidential relationship existed. It is significant that plaintiff not only deeded this property in question to the defendants but also executed a will which left all of her property to the defendants. So far as the evidence shows, a will was not even mentioned prior to the time plaintiff was taken to a lawyer's office. The will is immaterial here in so far as the land not covered by the deed in question was later sold by plaintiff. But, the fact that plaintiff was induced to make a will may be taken into consideration on the question of fraud, undue influence, and confidential relationship. It tends to prove that plaintiff had implicit confidence in the defendants. Furthermore, it will be noted that defendants accepted a warranty deed without any reservation in plaintiff's favor to protect her rights. We must rule that the trial court was justified in granting the relief prayed for.

On the question of the amount defendants were allowed, we must defer to the finding of the trial court. Defendant Andrew J. Throop was not definite as to the amount spent in repairs. In a deposition, he stated the total amount to have been $1,200. At the time of trial, the total was $1,900. In the deposition, the total amount spent for feed was $50 or $75. At the trial, it was $350. The trial court allowed a total of $492.01. There is nothing in this record to justify this court's disturbing the trial court's finding.

Defendants' contention that plaintiff was guilty of laches must be denied. It is true that the deed was made on October 15, 1947, and this suit was filed 5 years later, October 29, 1952. It was in evidence that the relations between the parties remained good for a year or more. Gradually the relations became less and less amicable and plaintiff, hearing of a proposed sale of her place and noting defendants' lack of interest in keeping up the place, took action. In the circumstances, defendants are in no position to urge laches. They were allowed compensation for what they had spent in repairs.

The judgment is affirmed.

LEEDY, P. J., and CAVE and ANDERSON, Special Judges, concur.

EAGER and STORCKMAN, JJ., not sitting because not members of the court when cause was submitted.